CHARLES G. GUTH *v.* J. M. ELLIOTT.
[No. 61, October Term, 1929.]

244

*Decided January 10th, 1930.*

The cause was argued before Bond, C. J., Pattison, Urner, Offutt, Digges, Parke, and Sloan, JJ.

*Edgar Allan Poe* and *Edgar Allan Poe, Jr.,* for the appellant.

*Walter V. Harrison,* with whom were *Rosenbush & Bernstein* on the brief, for the appellee.

Digges, J., delivered the opinion of the Court.

This case was tried by a jury in the Court of Common Pleas of Baltimore City and resulted in a judgment for the appellee. The appeal is from this judgment. The record contains three exceptions, the first two being to rulings on testimony, and the third to the court's action in granting the single prayer offered by the plaintiff. The facts necessary to be stated for a clear understanding of the case are substantially these:

The plaintiff was employed by the Mavis Bottling Company of America, the defendant being the president of that company up until July 18th, 1928. Under date of May 2nd, 1928, the plaintiff received the following letter from the defendant:

"J. M. Elliott, Esq., Baltimore, Md. Dear Sir: I am handing you herewith a copy of the Syndicate Agreement with reference to the stock of the Mavis Bottling Company of America, wherein it is set forth that I am entitled to a participation of ten thousand

(10,000) shares of said stock, upon the terms and conditions as stipulated therein. I agree that out of my participation of ten thousand (10,000) shares you are hereby given an interest in such participation to the extent of one-tenth thereof, amounting to one thousand (1,000) shares, and that you shall receive the profits, or assume the losses, according to such proportionate interest, and further subject to all the terms and conditions of said Syndicate Agreement. In consideration of the interest hereby given to you in my participation; I shall be pleased to receive from you reimbursement in the sum of one thousand ($1,000) dollars, representing one-tenth of the call of ten thousand dollars made upon me as a member of said syndicate. Will you kindly write your acceptance upon the copy hereof and retain for yourself the original enclosed? Yours very truly, Charles G. Guth.

"I have read over the foregoing and I hereby accept the same upon the terms and conditions hereinabove set forth. J. M. Elliott."

This letter contained duplicate copies of the syndicate agreement therein referred to, signed by Math. C. Brush, syndicate manager; which agreement is:

"Mr. C. G. Guth, Mavis Bottling Co. of America, Candler Building, Baltimore, Md. Dear Sir: I hereby confirm our understanding that you agree to participate in a joint account with others, including myself, with respect to the purchases by reason of existing options or otherwise and/or sale of stock of the Mavis Bottling Company of America, a Delaware corporation. The maximum number of shares which the account may hold at any one time is 125,000 shares. Your proportion of the account will be 8% or 10,000 shares, you agreeing to advance in New York funds your pro rata shares of the purchase price as and when called for by me. Orders with respect to said account are to be entered by me in my uncontrolled discretion. Complete information as to purchases and sales will be available at any time to any participant upon appli-

cation to me. Said joint account is to extend for a period not to exceed six months from the date hereof, but I at any time may require in my uncontrolled discretion each participant to take and pay for his pro rata of any unsold balance of said stock remaining in the account. Nothing herein contained shall be construed in any way as constituting the several participants partners with me or with one another; and each participant shall only be liable in an amount equal to his own participation, except that any losses by this joint account through the failure of any participant to carry out his obligation hereunder shall be charged as a loss to such account, but shall not operate to relieve any other participant from his liability hereunder; and participants will share pro rata in the net profits and net losses of this account after allowing for all expenses, as to all of which my written statement shall be conclusive on all participants. Please confirm such understanding by signing the subjoined acceptance on the duplicate hereof and return same to me with your check of $10,000. Very truly yours, (Signed) Math. C. Brush, Syndicate Manager. P. S.: Kindly sign and return duplicate participation agreement in enclosed envelope. I hereby agree to the foregoing."

The testimony of the plaintiff is that he accepted the offer made in the defendant's letter of May 2nd, signed the original letter at the bottom, and also two copies of the syndicate agreement, retained the original letter and one copy of the syndicate agreement, and delivered the other two papers personally to the defendant in the defendant's office in Baltimore City within one or two days after the receipt of the letter; that at the time of the delivery of these papers the plaintiff told the defendant that he did not have $1,000 to put up at the time, but did have $550 in cash and could give his note for the balance of $450; whereupon the defendant said: "Forget about it, Jim, I am putting that money up for you. This is one of the things I have been telling you about I am doing; don't you worry about the thousand dollars that you

are supposed to put up yourself; that doesn't even enter into it; that is only for those people I have included in it that must put the money up, because I am taking other people into this syndicate." That at the time of this conversation the plaintiff was receiving as compensation a salary of $100 a week, which salary was known to the defendant; that from that time on the defendant never requested him to pay the $1,000; that he was in a position to pay it had he been requested to do so. The plaintiff further testified to a number of other conversations had with the defendant, in which the defendant acknowledged the plaintiff's position as a participant in the syndicate; and testimony to like effect, or tending to prove what the plaintiff had testified to, was given by other witnesses, including Mr. Pearson, the person who succeeded the defendant as president of the company.

Evidence was offered on behalf of the plaintiff to prove that the profits arising out of the syndicate to the holder of each 1,000 shares was $3,777.38, and this was admitted as a fact by the defendant. The defendant concedes that the offer to the plaintiff to participate in the syndicate was made by him, but denies that it was ever accepted by the plaintiff. Testimony of other witnesses on behalf of the defendant, to like effect, was given.

Thus the testimony on behalf of the plaintiff on one side, and by the defendant and his witnesses on the other, is in direct and sharp conflict and presented a typical jury question. This conflict was resolved by the jury in favor of the plaintiff, and is a question with the decision of which, under the record here presented, this court has nothing to do. The offer by the defendant to the plaintiff being conceded, the question for the jury was whether such offer had been accepted by the plaintiff in such manner as to constitute a legally binding contract between the parties. There can be no doubt, if the evidence given by the plaintiff and the witnesses on his behalf was true, that such a contract was formed; and the jury by its verdict found such evidence to be true. The condition of the offer was the payment by the

plaintiff of $1,000, but if, in compliance with this provision of the offer, the plaintiff proposed to the defendant to make settlement of this amount by paying $550 in cash and giving his note for $450, and at such time the defendant waived the payment and told the defendant he did not have to make payment of the $1,000, but without doing so was a member of the syndicate, and never thereafter called upon the plaintiff for such payment, although the plaintiff was willing and able to comply with such demand, if made, the plaintiff would be entitled to the *pro rata* profits due to the owner of 1,000 shares of stock from the operations of the syndicate.

The first exception arose in the following manner. During the examination in chief of the plaintiff, after some testimony which the record shows in narrative form, this occurred: "Q. Who was present at this first discussion about an increase of salary, besides yourself and the president? A. It wasn't a question of increase in salary. It was a question of the stock bonus that was to be given to the various employees. Q. Oh, pardon me. Well, who was present at that time? A. Mr. Elwell, Mr. Hoffman—— (Mr. Poe, Sr.) : I object. I do not see that this is relevant to the case. The point is whether or not he agreed to take a participation in a syndicate with Mr. Guth. (The Court) : Isn't he telling that now? (Mr. Poe, Sr.) : No, sir; he is talking now about stock bonuses, and the right of the employees to have an opportunity to participate in a syndicate. Now, we are concerned here with a syndicate that they claimed in the opening statement was actually participated in. (The Court) : Isn't that the alleged agreement he is now talking about? (Mr. Poe, Sr.) : No, sir; that was way back in December. We are not disputing that opportunity was given him to participate; the question is whether he did participate; that's all. (The Court) : Well, I imagined he was commencing to describe—— (The Witness) : It is the condition leading up to this. (Mr. Rosenbush) : Go ahead. (The Witness) : Well, as I say, Mr. Elwell, Mr. Hoffman and myself—— (The Court) : Nothing in writing about that? (Mr. Rosenbush) :

Not at all, not at all. (The Witness) : Mr. Elwell, Mr. Hoff-man and this other Mr. Elliott and myself were present; not only one meeting, but more than one meeting, when this question was discussed, and Mr. Guth stated to us the basis on which we were to participate in this stock agreement, which was to originate the latter part of March or the first part of April, at the latest. Q. I see, and he was then dis-cussing a stock syndicate proposition that was to take place at some future date? A. Yes, sir. Q. And did he at that time tell you how you, the employees, were to participate in that, to what extent or on what terms? A. He told me we would be put in in an amount of one thousand dollars, from which we would receive the profits. Q. And did he tell any of the others the same thing, in your presence? A. He did. Q. Now, then, you say that conversation, or in substance, was repeated on several occasions between then and the time of the actual signing of the contract? A. Yes, sir." "To all of which questions and answers the defendant by his counsel objected, but the court overruled all of said objections, to which rulings the defendant excepted."

From the above it appears that the exception reserved was to the court's action in overruling the objection of the defend-ant to all of the questions and answers above set forth. In *Murphy v. State,* 120 Md. 229, at 234, Judge Thomas, speak-ing for the court, said: "The fifth bill of exception states that 'to each of said last five questions and answers the defendant, by his counsel, objected, because the same were not pertinent to the inquiry, but the court overruled the objection to such question and each answer, to which action of the court the defendant objected, and prayed the court to sign and seal this his fifth bill of exception,' etc. Each ruling of the court on the evidence should be made the sub-ject of a separate exception. One bill of exception cannot be made to embrace several exceptions to rulings on the evi-dence, and when it includes more than one exception this court will refuse to consider them. *Junkins v. Sullivan,* 110 Md. 539; *Balto. & O. R. Co. v. Rueter,* 114 Md. 687." See

also *Nichols v. Meyer,* 139 Md. 450, at 457. Under these authorities we are not at liberty to examine and pass upon the rulings embraced here in the first exception. We might add that, if it were properly before us, we perceive no reversible error in the court's action. The testimony of the witness was as to the general circumstances surrounding the parties and which led up to the definite offer contained in the letter of May 2nd, 1928, and simply indicated a general plan or purpose on the part of the defendant to in some way remunerate the employees of the company, or some of them, for their loyalty and devotion to the company's interest, which culminated and took definite form, so far as the plaintiff was concerned, in the letter of May 2nd.

The second exception grew out of the deposition of the witness Mehurin, which was read to the jury at the trial. This witness had testified that he had received a letter from the defendant identical with that received by the plaintiff, under the same date, and that the offer to him was accepted and $1,000 paid by him thereunder to the defendant; that the witness had received from the defendant his share of the proceeds of the syndicate, amounting to $3,777.38. Counsel for plaintiff then read the following question appearing in the deposition: "Mr. Mehurin, do you know of your own knowledge whether or not Mr. J. H. Elliott was a participant with Mr. Guth in this deal?" Counsel for the defendant objected to the reading of the answer to this question, which answer was: "I understood that he was. Mr. Guth advised me that a number of the other people connected with the company in a similar capacity had been offered the same proposition." The objection to this answer was overruled, and exception noted. It is contended by the appellant that this answer is not responsive to the question. It may be that this witness had no personal knowledge on the subject contained in the question. He did not say that he had such personal knowledge, but answered that he understood the plaintiff was a participant with Mr. Guth in this syndicate, and stated as his reason for that understanding that Mr.

Guth had advised him that a number of other people con-
nected with the company had been offered the same proposi-
tion as that offered the witness. It is clear that the latter
part of the answer was relevant as tending to corroborate
the testimony of the plaintiff as to his participation in the
syndicate. It would seem that the objection goes rather to
the weight to be given this answer than to its admissibility;
and its weight was a question for the jury.

The granting of the single prayer of the plaintiff consti-
tutes the third exception. This prayer is: "The court in-
structs the jury if the jury find from the evidence that the
defendant offered the plaintiff the interest in the syndicate,
as testified to, and that the plaintiff accepted said offer and
tendered the consideration in the form mentioned in the evi-
dence, and that the defendant stated he would not require the
plaintiff to pay the consideration, as testified to, and that a
profit was made, then their verdict must be in favor of the
plaintiff for the agreed upon proportion of that profit as
specified in said contract, less the amount the jury shall find
is due by the plaintiff to the defendant, with interest in their
discretion." The appellant urges as an objection to this
prayer that it is ambiguous, obscure and misleading. In 2
*Poe, Pl. & Pr.*, sec. 300, the author states: "It should be the
aim of counsel to so phrase their prayers that their precise
meaning may be readily understood, and it is always suffi-
cient ground for rejecting a prayer or for declaring it errone-
ous upon appeal that it was so drawn as to be calculated to
mislead the jury or that it was complicated, involved and ob-
scure"; and cites numerous decisions of this court where
prayers have been held to be properly rejected for one or
more of these reasons. It is true that other phraseology
might have made the meaning of the prayer now under con-
sideration more explicit, but we are unable to say that the
language used contains such ambiguity or obscurity as would
confuse and mislead a jury. "Though an instruction of the
court is not so explicit and free from fault as it might be,
yet if, when taken in connection with the evidence on which
it is based and the other instructions of the court, it is found

to present the question at issue fairly to the jury, the judgment will not be reversed on account of such instruction." *Eastern Shore Brokerage Co. v. Messenger,* 143 Md. 221; *Phila., W. & B. R. Co. v. Larkin,* 47 Md. 155. In their arguments to the jury the respective counsel have an opportunity to elucidate the meaning of the law embodied in and laid down by the prayers granted by the court, which should assist the jury to a clear understanding of the law as applied to the facts in a given case. Even assuming in this case that there was no such helpful explanation, we are of the opinion that the prayer fully and clearly instructed the jury as to the law applicable. They were told that if they believed from the evidence the defendant offered the plaintiff the interest in the syndicate and that the plaintiff accepted said offer and tendered consideration in the form mentioned in the evidence, and that the defendant stated he would not require the plaintiff to pay the consideration, and that a profit was made, then their verdict must be in favor of the plaintiff for the agreed upon proportion of that profit, as specified in said contract, less the amount, if any, the jury should find was due by the plaintiff to the defendant. It was clear from this instruction that before the jury could find a verdict for the plaintiff they must believe from the evidence, first, that there was an offer made by the defendant to the plaintiff to participate in the syndicate; second, that the plaintiff accepted the offer and tendered the consideration in the form and manner testified to; third, that the defendant told the plaintiff he would not require the payment of the consideration; and fourth, that a profit was made by the syndicate. It is argued that the words "as testified to" are not explicit or definite, in that it is not pointed out by whom such testimony was given. But there can be no force in this argument. The prayer was offered at the close of the whole case, and if the jury found that there was an offer made by the defendant to the plaintiff to participate in the syndicate, it would make no difference whether that testimony was given by the plaintiff or defendant. Likewise, if they found that the plaintiff accepted the offer and tendered payment, and the defendant waived such

payment, it would make no difference whether they found these facts from the testimony offered on behalf of the plaintiff or the defendant. In other words, they were to find the facts required to be found by the prayer; and if these facts were found from the evidence in the case, it was immaterial upon whose testimony the conclusion was reached. As heretofore stated, there was ample testimony, if believed, to warrant the jury in finding the facts required by the prayer; and we find no error in its granting.

*Judgment affirmed, with costs to the appellee.*