FRIEL *v.* FREELAND ET AL.

[No. 142, September Term, 1962.]

28

*Decided February 26, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Palmer R. Nickerson,* with whom was *Paul F. Due* on the brief, for appellant.

*Everett L. Buckmaster,* with whom were *Meyer Reamer, Irving S. Reamer, George White, Jr.,* and *Buckmaster, White, Mindel & Clarke* on the brief, for Helen Freeland, one of appellees.

*William A. Hegarty,* with whom were *O'Doherty, Gallagher & Hegarty* on the brief, for James E. Yox, other appellee.

SYBERT, J., delivered the opinion of the Court.

This is an appeal by Alma J. Friel, one of two defendants

below, from a judgment entered by the Baltimore City Court upon a jury verdict in the sum of $20,000 against both defendants in favor of the plaintiff, Helen Freeland (one of the appellees), for personal injuries sustained in an automobile accident. James E. Yox, the other defendant, did not appeal and appears as an appellee.

On July 30, 1960, shortly after midnight, Helen Freeland was a passenger in the front seat of an automobile driven south on Ritchie Highway by Yox. Ritchie Highway is a dual boulevard running north and south which is divided, at the site of the accident, into three marked lanes for southbound and three marked lanes for northbound traffic. In the center there is a grass dividing strip in which there is a paved cross-over opposite one of the entrances to the Ritchie Open-Air Theatre. It was raining quite hard at the time of the accident, and the road was straight, level and paved with blacktop. The speed limit was 45 miles per hour.

Yox testified that prior to the accident he had been driving at approximately 35 miles per hour in the southbound center lane for about one-quarter of a mile. Appellant, Alma J. Friel, had also been driving south somewhat more slowly than Yox and preceding him in the easterly, or left, lane. She testified that she saw Yox's headlights and that he was overtaking her. Yox stated that when the front bumper of his car was about even with the rear bumper of appellant's automobile, she suddenly and without any signal cut to her right into the center lane, forcing him to turn to the right in an effort to avoid a collision and causing his car to go into a skid, the left rear colliding with the right rear of appellant's vehicle. Yox then skidded to the west side of the highway and struck a pole in front of the theatre, seriously injuring Mrs. Freeland. Yox testified that his left rear tire was smooth to the point that it would slide on a wet surface.

Appellant testified that she had remained in the easternmost lane at all times. She said an automobile in the center lane passed her, entered her lane and, after giving a signal, turned left into the crossover. She stated that this automobile did not cut her off; that she slowed down normally and that just as she was coming to a stop she felt the impact of Yox's car hit-

ting her vehicle in the rear. She insisted that Yox was in her lane when he struck her; she denied making a sudden stop when the third car turned into her lane in front of her, and stated that she was not confronted with any emergency.

Yox strenuously denied the presence of any other automobile in the center lane in front of him, but said he did see a car in front of appellee in her lane. He denied having been in the left lane, and testified that appellant admitted just after the accident that she had pulled into his center lane. Debris was found by one of the investigating officers at the scene of the accident in the southbound center lane about one foot west of the painted line which separates it from the easterly lane.

Appellant contends on this appeal (1) that the evidence was legally insufficient to submit the question of her negligence to the jury; (2) that the trial court erred in its charge to the jury relative to negligence on her part; and (3) that the trial court abused its discretion in denying her motion for a new trial in view of a memorandum from which the jury foreman allegedly read when he announced the jury's verdict.

With respect to appellant's first contention—that the trial court should have directed a verdict in her favor because there was insufficient evidence of any negligence on her part—it does not appear clearly from the record that appellant offered either a demurrer prayer or a motion for a directed verdict. In view of the conflict of testimony as to how the accident occurred, we think that such a prayer or motion, if offered on her behalf, was properly refused.

Appellant's second contention is that the trial court, in two instances, did not correctly instruct the jury relative to the question of negligence on her part. The first of these objections was to that part of the charge where the court stated:

> "The road conditions vary indefinitely, and so do speed and traffic conditions. It is for you to say whether either or both of these drivers was negligent. That, of course, includes the instruction that if Mrs. Friel did turn to the right into the center lane at a time when it was dangerous and too late for Mr. Yox to avoid her, then Mrs. Friel was negligent in violating that turning rule."

We feel that this instruction, when viewed in the context of the testimony and the instructions which preceded and followed it, was an adequate and correct statement of the law. See *Christ v. Wempe,* 219 Md. 627, 150 A. 2d 918 (1959); *West v. Belle Isle Cab Co.,* 203 Md. 244, 250, 100 A. 2d 17 (1953). Prior to the instruction quoted, the court had instructed the jury with respect to the statutes relating to the operation of motor vehicles on laned highways. Thereafter it was pointed out that the factual testimony was irreconcilable and that the essential conflicts related to the lanes in which the vehicles were traveling immediately preceding the accident, *i.e.,* whether Yox struck appellant's automobile in the rear, or whether appellant turned out of her lane into Yox. As given, the instruction merely indicated the effect of appellant's possible violation of Code (1957), Art. 66½, Sec. 223 (a) (providing that a driver on a highway divided into three or more marked lanes shall not move into another lane until the driver has ascertained that such movement can be made with safety), which statute had been read to the jury verbatim earlier in the charge. Since the jury had before it Yox's testimony that appellant had turned into the center lane, which testimony they were entitled to believe, this portion of the instructions was not objectionable.

The appellant's other objection to the charge to the jury was to that portion of it which dealt with the subject of an emergency. In substance, the court after commenting generally on what constituted negligence instructed the jury substantially in accordance with the rule which has been followed ever since *Burhans v. Burhans,* 159 Md. 370, at 375-76, 150 Atl. 795 (1930), in cases where the emergency is not created by any act of the defendant himself. This instruction was in general terms and concluded by stating in effect that where one is confronted with a sudden emergency, the standard of conduct by which the question of his negligence is to be determined is that of an ordinarily prudent person when confronted with the emergency, and that his conduct may be different from what it would have been if he had time to stop and think about what should be done.

The complaint appears to be that the instruction did not give sufficient emphasis to the fact that if the jury found that Mrs.

Friel turned to the right into the center lane, it could also find that such action might have been caused by the unidentified driver turning across in front of her. In any event, the instruction given was at least as favorable as appellant was entitled to, in view of her own testimony. She said that the car pulling from the center lane in front of her did not cause her to make a sudden or abrupt stop. Only the appellant and Yox testified as to the actual happening of the accident, and there was no basis in their testimony for instructing the jury as to an emergency confronting appellant. *Schaefer v. Publix Parking,* 226 Md. 150, 153, 172 A. 2d 508 (1961).

The final point raised by appellant is that the lower court was guilty of abuse of discretion in denying her motion for a new trial because of the character of certain statements in a memorandum from which the foreman of the jury allegedly read when he announced the verdict. After the verdict was rendered, the memorandum was not offered or introduced into the record, but the record extract contains a note which states that on the next morning the memorandum was obtained from the jury foreman and "filed among the documents in this case" (it is not stated by whom). The memorandum read as follows:

> "In view of inconclusive testimony on the part of both parties we find joint responsibility on the part of both defendants and that they should both shoulder that responsibility. We award the plaintiff a *total* of $20,000 to cover all claims."

The proceedings at the rendition of the verdict were not transcribed by the court reporter. However, we gather from a notation dictated by the trial judge, and from appellant's brief and statements of her counsel, that when the clerk asked what the verdict of the jury was, the foreman read or recited substantially the first sentence of the memorandum. The clerk thereupon interrupted and said: "For whom do you find your verdict?" and the foreman replied: "We find a verdict against both defendants." The clerk then asked in what amount they assessed damages and the foreman stated: "At "$20,000 and there is joint responsibility." The jury was then hearkened and assented to the verdict, which was then recorded in the usual

form in such cases, without the extraneous material. Appellant made no objection or motion of any kind when the verdict was received. She subsequently moved for a new trial, but did not file the memorandum with the motion. The motion was denied.

Appellant's contention is that the reference in the memorandum to the "inconclusive testimony on the part of both parties" indicates that the jury's verdict was based on legally insufficient evidence and that therefore a new trial should have been granted. A defect in the form of a verdict may be attacked either by a motion in arrest of judgment, which is reviewable, or by a motion for a new trial, *Havens v. Schaffer*, 217 Md. 323, 325, 142 A. 2d 824 (1958), the latter motion not being reviewable, whether granted or denied, unless the trial court has abused its discretion. *Brinand v. Denzik*, 226 Md. 287, 173 A. 2d 203 (1961).

In the instant case appellant filed no motion in arrest but did move for a new trial, and we find no abuse of discretion in the denial thereof. In view of the evidence against both defendants, and the inconclusive character of the testimony of each to exculpate either himself or herself, the memorandum appears to be simply a layman's way of saying that the negligence of each defendant was a proximate cause of the accident. The verbiage read or recited by the foreman was plainly a matter of form, and not of substance, and it was proper for the trial judge to reject it as surplusage and to "mold the verdict into proper shape". *Davis v. Board of Education*, 168 Md. 74, 78, 176 Atl. 878 (1935). See also *Diamond State Co. v. Blake*, 105 Md. 570, 66 Atl. 631 (1907); *Gover v. Turner*, 28 Md. 600 (1868); *Browne v. Browne*, 22 Md. 103, 115 (1864). We feel, as the trial judge obviously did, that the jury had before it legally sufficient evidence from which it could find that both Yox and Mrs. Friel were negligent and that the negligence of each was a proximate cause of Mrs. Freeland's injuries.

In view of what has been said we find it unnecessary to consider the question whether or not the jury's memorandum was ever properly introduced into the record.

*Judgment affirmed; appellant to pay the costs.*