EDMUND JOSEPH KOWALEWSKI *v.* GUY A.
CARTER and Guy A. Carter, to the Use of
Ohio Security Insurance Company

[No. 361, September Term, 1970.]

*Decided February 8, 1971.*

184

The cause was argued before ANDERSON, ORTH, and POWERS, JJ.

*William J. Evans* and *K. Donald Proctor* for appellant.

*Stanley Getz* and *William K. Connor* for appellee.

ORTH, J., delivered the opinion of the Court.

At the time of the automobile accident, which is the subject of this case, John Carroll School was located off the south side of Route 22 near Bel Air, Maryland. At that point the highway was straight and ran east and west. It had two lanes, the south, 12½ feet wide, for eastbound traffic and the north, 12 feet wide, for westbound traffic. The lanes were separated by yellow painted, double, no-passing-zone, lines. The speed limit was 50 miles an hour. On each side of the highway was a shoulder about 8 feet wide. The south or eastbound lane was intersected by a driveway providing ingress to and egress from the school grounds. There was a stop sign controlling traffic entering Route 22 from the driveway. Thus Route 22 was a favored highway and the school driveway an unfavored intersecting road on which traffic was required to stop by a traffic control device and to yield the right-of-way to traffic approaching on the favored highway. Code, Art. 66½, § 233 (a) and (b) and § 242 (a), (b) and (c).[1]

---

1. The accident here occurred on 28 April 1968 and Code references are to statutes then applicable. Ch. 534, Acts 1970, repealed Art. 66½ and enacted a new Art. 66½ in lieu thereof effective 1 January 1971.

There were three automobiles involved in the accident. One was operated by Edmond Joseph Kowalewski, defendant-appellant. There were three passengers in this vehicle, Kowalewski's wife Doris, and Mr. and Mrs. Richard Elder Smith. The second was operated by Guy A. Carter, who individually and to the use of the Ohio Security Insurance Company was the plaintiff below and is the appellee on appeal. He was the only occupant of the vehicle. The third was operated by Edward A. Lawhon and his wife and baby girl were passengers. The Lawhons are not parties to this appeal.

Evidence adduced tended to show that in the early morning hours of 28 April 1968 the Kowalewski car came from the school driveway, proceeded across the eastbound lane of Route 22 and made a left turn onto the westbound lane. The Carter car was travelling west on Route 22 in the westbound lane. The Lawhon car was travelling east in the eastbound lane. The Carter car struck the rear of the Kowalewski car which after the impact continued west in the westbound lane, crossed the shoulder, jumped a ditch and came to rest against a dirt bank. The Carter car was driven into the eastbound lane and struck the Lawhon car.

Carter sued Kowalewski in law in the Circuit Court for Harford County, individually for personal injuries, damages, losses and expenses, and to the use of the insurance company carrying his collision coverage for damages to his automobile. The case was tried by a jury. At the close of Carter's case Kowalewski offered a motion for a directed verdict and it was denied. At the close of all the evidence Carter and Kowalewski each offered a motion for a directed verdict. Each motion was denied.[2] The jury returned a verdict in favor of Carter individually

2. The docket entries state that Kowalewski's motion was denied. As to Carter's motion the docket entries read: "Motion denied but Granted as to Contributory Negligence only." However the transcript of the proceedings shows the court said: "Let the record show * * * that each side offered a Motion for Directed Verdict at the close of the whole case and each motion was denied by the Court."

against Kowalewski in the sum of $12,500 and in his favor to the use of the insurance company against Kowalewski in the sum of $1700. Judgment *nisi causa* was entered on each verdict. After Kowalewski's motions for judgment N.O.V., for a new trial and for remittitur were heard and denied judgments absolute were entered. He appeals from the judgments.

Trooper Raymond F. Leard of the Maryland State Police was the first person to arrive on the scene immediately after the accident. A diagram he drew at the trial showing the position of the vehicles as he found them after the collisions was admitted in evidence. The point of impact between the Carter and Kowalewski's cars was in the middle of the westbound lane of Route 22 at a distance of 45 feet west from an extension of the west curb line of the school driveway. The Kowalewski car was 100 feet west of the point of impact. Skid marks 22 feet long led to the point of impact. The Lawhon car was in the middle of the eastbound lane, angled toward the center of the road and 40 feet west from the west curb line of the school driveway. The trooper ascertained the distances by measurement. He was asked what evidence he found at the scene which satisfied him that the point of impact was as indicated by him. His answer may be fairly construed that he found debris in and marks on the roadway.[3] The damage to the Carter car

3. He said: "There was a mark in the road at this point here, which was a scrape mark. In other words, the car that was struck here was the Kowalewski car, and there was a trail that went sort of like this, which led to the rear of the Kowalewski car, and this was like a residue of burned gasoline and you could see some— still see some of the gasoline that wasn't burned and some little car parts and glass and things like that. And this showed where— And there was some skid marks from about here. They were twenty-two feet—twenty-two feet of skid marks, and then there was markings that showed that the Carter car, after striking this car, went into this lane and it appeared at the time that the Carter car had been turned; in other words, hadn't hit Kowalewski's car dead-on. It appeared that the driver had attempted to veer to the left. (Indicating.)" Apparently he was referring to the diagram drawn by him so that what he was saying was intelligible to court, jury and counsel present. It would have been advisable if steps had been taken to have the record show where the various references to "here" were and what he "indicated."

was "on the front, but it was generally to the right-front." The damage to the Kowalewski car was "to the rear, but mainly to the left rear. * * * There was damage all across the rear but more extensive" in the left rear. The officer's investigation did not reveal mechanical defects in any of the vehicles which would have been a contributing cause to the accident.

On cross-examination the trooper was asked if he told an attorney for Kowalewski that the point of impact was between 150 and 200 feet from the driveway of the school. He said: "I don't remember telling that, no, sir." He denied that when he prepared the accident report four days after the accident he put down 45 feet when he meant 45 yards—"No, sir, I don't measure in yards." Michael J. Doxzen, an attorney, testified for Kowalewski. He said he had at one time represented Kowalewski with respect to the accident and had talked to the trooper. Objection was made to the question: "What, if anything did Trooper Leard tell you about distances of the point of impact of the accident?" The court ruled that it would be admitted "to the extent that it's offered as a rebuttal to previous testimony." The answer was that two days afer the accident the trooper told the attorney the "point of impact of the accident happened about a hundred and seventy-five to two hundred feet away from the driveway of the high school towards Baltimore City."

Kowalewski in his testimony estimated the point of impact to have been 50 yards or 150 feet from the point where he turned onto the westbound lane of Route 22. "The thought entered my mind was half the distance of a football field * * *. About half the distance [of a football field] it seemed like I travelled in my car." [4] Smith,

4. The testimony of Kowalewski's wife on the point is not clear. The transcript of her direct examination reads:
"Q. And do you have a recollection of how far he [Kowalewski] travelled after entering the highway or State Route 22 before the impact occurred?
A. Not exactly. I only know how far back. I backtracked to the intersection.
Q. Well, how far was that, if you have an estimate?
A. When I got out of the car and ran back toward the

a passenger in Kowalewski's car testified on his behalf that they had travelled up the road "I'd say forty — oh, forty yards, I guess" when the car was hit in the rear. Lawhon, called by Kowalewski said he estimated that the first impact between Kowalewski's car and Carter's car was "not more than two hundred feet. Probably somewhere between one and two hundred feet would be my best guess," from the west side of the school driveway. On cross-examination of Carter it was elicited that he thought the point of impact was nearer the school driveway than 45 feet. "I think it was back farther to the intersection." It was his opinion "I might have hit him two or three or four feet back further" than 45 feet.

The point of impact was a crucial element in the case. Since Route 22 was a favored highway and the school driveway an unfavored intersecting road on which traffic was required to stop and yield the right-of-way to traffic approaching on Route 22, the Boulevard Rule would apply if the collision occurred as a direct consequence of the entrance of the Kowalewski car onto Route 22 in disregard of its obligation to yield the right-of-way. *Oddis, et al. v. Greene,* 11 Md. App. 153. Carter's case was based on the application of the Boulevard Rule. However, if the accident did not occur while Kowalewski was entering Route 22 the Boulevard Rule would not be applicable. The Motor Vehicle Law requires the unfavored driver to yield the right-of-way, and he does so by not entering the highway.[5] Once he has safely entered, rules other than the Boulevard Rule apply. Kowalewski's defense was that the accident occurred after he had entered the favored highway safely and that negligence of Carter directly contributed to the accident. The obliga-

intersection, I would say it was twice the width of this Courtroom and I still hadn't reached it.

Q. And the width of the Courtroom is ——

A. The Courtroom—Well, twenty or twenty-five feet from the intersection, then."

5. The law requires the unfavored driver to both stop *and* yield the right-of-way. Evidence that Kowalewski stopped at the stop sign before proceeding onto Route 22 was not disputed.

tion of Kowalewski to yield the right-of-way was not limited by the law to the area within the intersection itself. It extends to traffic approaching on the favored highway during its passage past the intersection. *Harper v. Higgs*, 225 Md. 24, 31. "The fact that a collision occurs outside the intersection does not bar the applicability of the boulevard rule, if the collision is the result of a violation of the boulevard law or its equivalent." *McDonald v. Wolfe*, 226 Md. 198, 203. "However, once the entering car has cleared the intersection and reached a point where it does not interfere with the favored driver's right-of-way through the intersection, the boulevard law ceases to be applicable. * * * Rigorous as are the duties imposed upon the unfavored driver in entering the public highway for the protection of the public and for the smooth flow of traffic, he is not a perpetual pariah; if he has observed the mandates of the law in entering the intersection and has become a part of the flow of traffic on the favored highway, he has the same rights and is subject to the same duties as the other drivers on that highway." *Grue v. Collins*, 237 Md. 150, 157.

The lower court submitted to the jury, and we think properly so, the issue whether the collision occurred while the Kowalewski car was entering Route 22 or whether at the time his car was struck by the Carter car he had yielded the right-of-way and become a part of the flow of traffic on the favored highway. The evidence was not conclusive that the accident did occur while entering. There was no evidence that the collision occurred within the confines of the intersection so the presumption that the unfavored driver was entering the favored highway at the time of the accident did not arise. Nor was the evidence conclusive that the unfavored car had successfully entered. In resolving the question so important to a determination of whether it was the primary negligence of Kowalewski that was the proximate cause of the accident—if the collision occurred while Kowalewski was "entering" onto the fa-

vored highway or not—the point of impact was not only material but of the utmost probative value. Whether the impact occurred 15 yards from the intersection or 40 or more yards from the intersection would substantially influence the issue of whether Kowalewski had successfully entered onto the favored highway and become a part of the flow of traffic. And in ascertaining the point of impact the credibility of the trooper was of major importance. Not only was his credibility attacked indirectly by the testimony of other witnesses in conflict with his testimony, but it was attacked directly by Doxzen's testimony that the trooper had told him the point of impact was about 175 to 200 feet from the intersection. The court made this very clear to the jury. Doxzen's testimony closed the evidence and immediately after a short recess the court told the jury:

> "Mr. Foreman, Ladies and Gentlemen of the Jury, I want to explain something to you and for the record. The testimony of Mr. Doxzen regarding his conversation with Trooper Leard was admitted into evidence by the Court, over objection, on the sole basis that it was evidence offered to attack the credibility of the trooper's testimony, which was given in open Court. It is not affirmative evidence on the part of the defense and is not to be considered as such by you. When I say 'affirmative evidence', I mean that the distance testified to by Mr. Doxzen, as given to him by the trooper, is not to be considered as evidence offered by the Defendant as to the distances. It's simply offered to attack your belief in the credibility of the trooper, who had given in earlier testimony and had recited a different distance, if you recall. I'm sure you do." [6]

---

6. The court explained to the jury that the trooper had been notified to return to testify for Carter in rebuttal but "his assignment kept him away, so it was decided not to hold up the trial. So he will not be offered as a rebuttal witness."

There is no doubt that the judge below made clear in his instructions to the jury that the credibility of the witnesses was a matter for them.[7] But after his remarks concerning the credibility of witnesses, the judge spoke of an expert witness as an exception to the rule that a witness may not testify as to his opinion or conclusions. "You should consider the expert opinion received as evidence in this case and give it the weight you think it deserves and you may reject it entirely, if you conclude the reasons given in support of this opinion were unsound." He noted: "And, of course, the only expert witness in this case would be the doctor." At this point all was well. But then he continued:

> "I don't think there was any attempt to make the trooper an expert witness, as such, but, of course, the trooper, by his own experience and work, has to be given some credence. Well, I won't—He can be—A trooper can be considered an expert. Now, I don't know whether they intended to call him an expert, but certainly the doctor was an expert and was so admitted by the Defense if you remember."

7. Early in his charge to the jury the judge said:

"Whatever I might say about the facts or about the witnesses who have testified, if I make any comment at all about them, is purely advisory and you are not bound by it. It is your function to decide the truth of the testimony as given you by the various witnesses, and whatever I might say about the facts is only for the purpose of clarifying and not with the idea of influencing your decision. That is your responsibility, and its your sole responsibility."

Near the conclusion of his charge the court said:

"Now when we consider witnesses, which you must do, you are the sole judges of the credibility of each and all of the witnesses. In considering credibility you may apply your own common sense and your own every-day experience. You're not bound to believe any witness, even though his testimony is uncontradicted. You may believe all, part or none of the testimony of any witness. In determining whether or not to believe a witness and if so, to what extent, you should carefully scrutinize the whole testimony given by that witness, the circumstances under which the witness has testified and every matter in evidence which tends to indicate whether a witness is worthy of belief."

The charge concluded after brief remarks relating to the verdict to be rendered. The matter of credibility of witnesses was not further brought to the attention of the jury.

Kowalewski claims prejudicial error in the portion of the instruction "* * * the trooper, by his own experience and work, has to be given some credence * * *."

When the court called for exceptions at the conclusion of the charge appellant's counsel said: "The Defendant excepts to the court's statement, which I may not have written down precisely correctly, but it has the essence of, that the trooper, by virture of his experience, must be given some credence." The court took no action on this exception.

Carter disposes of the contention only by asserting that it is not properly before us for review because below no ground was given for the exception to the instruction as required by Maryland Rule 554 d. While usually procedural requirements established by the Rules of Practice and Procedure must be observed, we are not persuaded to dismiss the contention on what we believe in the circumstances here to be a fine distinction. Objection was made to the instruction before the jury retired to consider their verdict as the Rule requires. And as the Rule requires, appellant stated distinctly the portion to which he objected. The Rule does provide that "the ground of his objection" shall be stated, but it was perfectly evident, particularly in the light of the other parts of the charge regarding credibility, that the ground was that the credibility of the trooper was solely for the jury and that to tell them that he "has to be given some credence" was wrong. It is inconceivable that the court and opposing counsel did not comprehend that this was the ground of the exception. We shall consider the contention on its merits.

There can be no doubt that the credibility of the witnesses is a matter for the jury. The Court of Appeals has consistently so held in a myriad of cases, and cer-

tainly as far back as *Townshend v. Townshend,* 6 Md. 295. In *State Roads v. Creswell,* 235 Md. 220, 229, it said: "What must be remembered in the final analysis * * * is that the credibility of experts as of other witnesses is for the jury's evaluation." The judge below so told the jury. But then as to a specific witness, the trooper, he to all intent and purpose carved out an exception to the rule he before set out. He told the jury that the trooper, whether or not he be considered an expert,[8] "by his own experience and work, *has to be given some credence.*"[9] (Emphasis supplied.) Considering the importance of the trooper's testimony in the case, to tell the jury that because of his experience and work his statements had to be given some credence, that is some acceptance as true or valid, and to leave that remark unfollowed by any further discussion with respect to the jury's duty as to credibility and otherwise completely unexplained, was prejudicial error. The trial judge later made known that he thought he had erred. He said upon hearing on the motions made after verdict, one of the grounds of which was the contention here made:

"Now, coming down to the nitty-gritty, where the Court felt that it has erred; and that is, it had in mind solely the doctor as an expert witness and how he was qualified to deliver opinions and so on, I think the Court went too far when it just, out of the clear blue, — and this was not in any prepared instruction — but I thought just perhaps the Jury might think that the Trooper was an expert and I did mention something about his experience and giving some

---

8. The trooper's experience and expertise in the field of accident investigation was brought out, but it did not appear that he was offered as an expert as to the point of impact or, in fact, as to any of his testimony.

9. The first definition given for credence in the American Heritage Dictionary of the English Language (1969) is: "Acceptance as true or valid; belief." Webster's Third New International Dictionary (unabridged) gives a like definition: "Acceptance (as of a story or statement) as true."

credence to his testimony. I may have been wrong there, but I'm not convinced that it was such an error that I prejudiced the Defendant's case. If I were convinced in my mind that it was a prejudicial statement to the Defendant's case, I would grant your motion, but I am not convinced that it was. I think I was in error, but I don't think it's a prejudicial error. Now, perhaps another Court or another Judge could well say that it was, but I have given it a lot of thought and I've reached that conclusion."

We are in accord with his conclusion that he erred; we cannot agree with his determination that the error was not prejudicial in the factual posture of the case. The Court of Appeals has indicated that a jury comprised of laymen does not have "the professional expertise, experience, and judicial temperament with which our legal system has inherently invested a trial judge." *State v. Hutchinson*, 260 Md. 227. The trooper was specifically singled out by the trial judge to the jury in the challenged instruction and they may well have felt, at the least, that, contrary to what they had a right to do, they were precluded from rejecting his testimony entirely. If so it would affect the jury's evaluation of the credibility of the other witnesses and the weight to be given their testimony. We feel that the challenged instruction, standing uncorrected and unexplained, tended to mislead the jury and that appellant is entitled to a new trial.[10]

We hold that the instruction constituted reversible er-

10. It is stated in 53 Am. Jur. *Trial*, § 599, p. 473 that the trial judge in charging the jury may not interfere with the province of the jury in determining the credibility of witnesses. The general rule is that it is considered improper for a court to make any suggestion concerning the credibility of witnesses, or to give any instruction which seems designed to influence a jury as to the credit to be given a particular witness. Even where comment upon the evidence is permitted he must leave the jury free to believe it or not. "[T]he court may not by its instructions take away from the jury the right to consider the credibility and weight of evidence." At p. 474.

ror, particularly when evaluated in the frame of reference of the crucial nature of the point of impact and the conflicting evidence with regard thereto. We have reached this holding not without giving due regard to the general rule that in considering alleged error in a charge of the trial court to the jury, we will consider the charge as a whole and will not select, out of the context of the whole charge, individual statements which might, of themselves and out of context, contain inartificial methods of expression or appear to be misleading. *Jones v. Federal Paper Board Co.*, 252 Md. 475 and cases therein cited. We feel for reasons apparent in the discussion *supra* that the challenged charge here is without this general rule.

The remaining questions presented by appellant allege error in other instructions to the jury. We need not reach them.

*Judgments reversed; case remanded for a new trial; appellee to pay costs.*