CELESTA J. CARTER *v.* MICHAEL
JUAN CORREA ET AL.

[No. 1086, September Term, 1974.]

*Decided October 31, 1975.*

398

The cause was argued before MOYLAN and LOWE, JJ., and JOHN C. ELDRIDGE, Associate Judge of the Court of Appeals, specially assigned.

*Francis J. Ford* for appellant.

*Edward P. Camus,* with whom were *Camus & Perry, James E. Fannon, Jr.,* and *Hoyer & Fannon* on the brief, for appellee Correa. *Marvin B. Miller,* with whom were *Blackwell, Miller, Markey & Hoffman* on the brief, for appellee Owen.

ELDRIDGE, J., delivered the opinion of the Court.

This case arises out of an automobile collision between defendants Celesta Carter and Nancy Carol Owen. Nancy Correa, a passenger in the Owen automobile, died of injuries sustained in the accident. Michael Correa, on behalf of himself and the estate of Nancy Correa, and Tamara Correa, by Michael Correa, her father and next friend, brought suit in the Circuit Court for Prince George's County (Mathias, J.), alleging that both Carter and Owen were negligent. Both

defendants filed cross claims alleging that the other was negligent. Owen sought recovery from Carter for her injuries while Carter sought a judgment against Owen for "all or a contributable portion of any judgment" in favor of Correa against him. Jury verdicts, totaling $167,028, were returned against Carter only and in favor of the plaintiff, consisting of $25,000 to Michael Correa individually, $140,000 to Tamara Correa, and $2,028 to Michael Correa as administrator. The plaintiff later agreed to a remittitur in the amount of $50,000 on the verdict in favor of Tamara Correa. The jury also awarded Owen $2,890.45 on her cross claim against Carter. From judgments for these amounts, Carter appeals.

The accident occurred in Prince George's County, Maryland, on the night of July 1, 1972, at or near the intersection of Piscataway Road and Temple Hills Road. Temple Hills Road, which is controlled by a stop sign and is the unfavored road, begins at this intersection and runs north from Piscataway Road. It is undisputed that Carter was driving west on Piscataway Road at the time of the accident. However, few other pertinent facts concerning the accident, including the direction in which the Owen car was traveling, are known with any degree of certainty.

Officer Theodore Cox of the Prince George's Police Department investigated the accident. He testified that when he arrived at the accident scene the fire department had already washed the road of all debris 50 feet on either side of the intersection. Cox did observe that the Carter automobile, a Plymouth, was in the westbound lane of Piscataway Road 100 feet west of the intersection and was overturned. The Owen car, a Volkswagen, was upright but off the road approximately 100 feet west of the intersection and 15 feet from the northern edge of Piscataway Road. Cox was unable to find any witnesses at the scene.

After Owen, Correa, and Carter had been taken to a local hospital by ambulance, Officer Cox interviewed Carter about the accident. Carter told Cox that he had been traveling west on Piscataway Road at 45 to 50 miles per hour when he saw headlights from the side street to his right just

prior to the collision. According to Cox, this was all Carter could remember of the accident. Cox also testified that at the hospital Carter was "loud and boisterous" and that there was a "smell of alcohol about his person."

Officer Cox interviewed Mrs. Owen the next day, but she could recall no details of the accident, including the direction in which she was driving. At the conclusion of his investigation, Cox filed an accident report which indicated that Mrs. Owen had been making a left turn from Temple Hills Road onto Piscataway Road. On cross-examination he said that this was his conclusion based on Carter's statement at the hospital that he had seen headlights approaching from the right and based on Cox's examination of tire marks in the grass adjacent to Piscataway Road and 100 feet from the intersection.

James Landis was the only eyewitness other than Carter or Owen who testified. Landis was a passenger in a car traveling east on Piscataway Road and driven by one Chuck Woods. Attempts to locate Woods, who refused to stop at the accident scene, were unsuccessful. Landis testified that when he was approximately 200 feet west of the intersection he saw the Owen automobile enter the intersection from Temple Hills Road and turn left onto the east lane of Piscataway Road. According to Landis, Owen's Volkswagen had completely entered the east lane when the Plymouth driven by Carter, traveling at 70 to 80 miles per hour, came around a curve, crossed the center line, and collided with the Volkswagen. Landis testified that the collision occurred completely in the east lane of Piscataway Road. He indicated on a drawing of the intersection that the point of impact was just inside the intersection.

When, during cross-examination by counsel for Owen, Landis was asked how far the Volkswagen had traveled before the collision had occurred, he stated that he did not know. Landis was then shown a signed written statement and was asked to verify that it was his. After verification, Landis read a portion of the statement which said that the Volkswagen had straightened up in its lane and traveled 15 feet before it was hit in the eastbound lane. Two days later,

at the beginning of the presentation of her case, Owen was allowed to introduce the entire statement into evidence over Carter's objection.

Celesta Carter testified that on the night of the accident he had been playing softball at a field near the intersection. After the game Carter drank five or six beers in a period of approximately three hours. Immediately thereafter he proceeded home, traveling west on Piscataway Road. He recalled that just prior to the collision he had entered a curve and slowed down from 40 to 30 miles per hour when he saw headlights from the eastbound lane of Piscataway Road angling into his lane. He stated that he slowed down further and moved partially onto the shoulder of the westbound lane. At this point, according to his testimony, the collision occurred. He believed that the impact had occurred in the west lane of Piscataway Road and that the car whose headlights he had seen had been in the east lane of Piscataway Road just prior to the collision. He did not know whether he had passed the intersection at the time of impact, and he therefore could not state whether or not there was a car on Temple Hills Road or whether a car was making a turn from Temple Hills Road. Carter disputed both Landis's and Cox's testimony that he was exceeding 40 miles per hour, claiming that at no time did he exceed 40 miles per hour. He also challenged Cox's testimony that he was loud or boisterous at the hospital and disputed any implication that he may have been intoxicated. He explained that he was only protesting the lack of attention at the hospital, and he insisted that he was sober on the night of the accident.

Nancy Owen contradicted Landis's testimony that she had made a left turn from Temple Hills Road onto Piscataway Road. She testified that she and Mrs. Correa had just left her apartment en route to Washington. Although she had no memory of the accident itself, she believed that she was traveling east on Piscataway Road and would have been making a left turn into the northbound lane of Temple Hills Road as this was her normal route to Washington. She further indicated that even if she had been turning from Temple Hills Road onto Piscataway Road, she would have

been making a right turn rather than a left turn. She based this belief on the fact that she lived west of Temple Hills Road and had no reason that evening to go east on Piscataway Road past the intersection. When she learned that the accident report showed that she was making a left turn onto Piscataway Road, she contacted Officer Cox and requested that he change the report to show that she had been making a left turn onto Temple Hills Road, but Officer Cox refused to make the change.

It can readily be seen that the testimony in this case suggested several conflicting versions of how the collision occurred. Moreover, adding to this uncertainty was the evidence concerning the position of the automobiles after the accident which seems to be inconsistent with most, if not all, of these versions.

(1)

On this appeal, Carter contends that the trial judge erred in not granting his motion for a directed verdict in his favor on Correa's original claim and on both cross claims, and in submitting the case to the jury. He argues that the evidence clearly established that Mrs. Owen entered a favored road, Piscataway Road, from an unfavored road, Temple Hills Road, thus making the boulevard rule applicable. Carter's theory is that since the boulevard rule was applicable, Mrs. Owen was negligent as a matter of law, precluding any recovery from Carter.

In ruling on a motion for a directed verdict or a motion for judgment n.o.v., the trial court must consider all credible evidence and inferences fairly deducible therefrom in a manner most favorable to the party against whom the motion is made. *Moran v. Faberge*, 273 Md. 538, 540, 332 A. 2d 11 (1975); *Greyhound Lines, Inc. v. Alderson*, 26 Md. App. 277, 283, 336 A. 2d 811, *cert. denied*, 275 Md. 749 (1975); *Tippett v. Quade*, 19 Md. App. 49, 56, 309 A. 2d 481 (1973). In light of the evidence showing various versions of the accident, we believe that the jury could reasonably find that the boulevard rule was not applicable. Based upon Landis's testimony, and in the absence of evidence as to the point of

impact, the jury could conclude that Mrs. Owen had successfully cleared the intersection, entered her own lane, and reached a point where she did not interfere with the favored driver. Under these circumstances, the boulevard rule would cease to be applicable. *Quinn Freight Lines v. Woods*, 266 Md. 381, 387, 292 A. 2d 669 (1972); *Grue v. Collins*, 237 Md. 150, 157, 205 A. 2d 260 (1964); *Roberts v. Fairchild*, 14 Md. App. 612, 617, 287 A. 2d 778 (1972); *Kowalewski v. Carter*, 11 Md. App. 182, 189, 273 A. 2d 212 (1971). In the alternative, in light of physical evidence indicating that the two cars had collided from left front to left front, and Mrs. Owen's testimony that her normal route to Washington would require making a left turn from Piscataway Road onto Temple Hills Road, coupled with Carter's testimony that he saw lights on his *left* angling towards his lane, the jury could conclude that Mrs. Owen was herself traveling on the favored road. There was sufficient evidence, therefore, to find that the boulevard rule was not applicable. The trial judge properly submitted this issue to the jury. *See Kowalewski v. Carter, supra*, 11 Md. App. at 189-190.

Moreover, even if the boulevard rule would have been applicable as a matter of law, the motion for a directed verdict in favor of Carter on the original claim by Correa would have been properly denied although Carter would have been entitled to a directed verdict exonerating him from liability to Owen on her cross claim. In an action where the boulevard rule is applicable, the unfavored driver is negligent as a matter of law. If the plaintiff is the unfavored driver, the action is defeated unless the doctrine of last clear chance is applicable. *Hensel v. Beckward*, 273 Md. 426, 431, 330 A. 2d 196 (1974); *Creaser v. Owens*, 267 Md. 238, 245, 297 A. 2d 235 (1972). And if the unfavored driver is the defendant, he is liable unless it is established that the favored driver was guilty of contributory negligence which was the proximate cause of the accident. *Creaser v. Owens, supra*, 267 Md. at 245; *Brown v. Ellis*, 236 Md. 487, 494, 204 A. 2d 526 (1964). But where the plaintiff is a passenger in the unfavored driver's vehicle, the negligence of the unfavored

driver is not imputed to the passenger. The passenger would be entitled to recover from both drivers upon proving that both were negligent and that such negligence proximately caused the accident. *Shedlock v. Marshall*, 186 Md. 218, 237, 46 A. 2d 349 (1946); *see also Harper v. Higgs*, 225 Md. 24, 169 A. 2d 661 (1961). *Cf. Greyhound Lines, Inc. v. Alderson, supra*, 26 Md. App. at 285-288. The evidence of Carter's excessive speed and crossing the center line would have been sufficient to find that he was negligent. It would therefore have been proper for the jury to determine whether his negligence was a proximate cause of the accident, and if so, to allow recovery on Correa's claim and to deny Carter recovery on the cross claim.

### (2)

Carter also argues that the trial court's instruction to the jury on the boulevard rule was erroneous and that a subsequent instruction correcting the error did not cure the prejudice.

The jury was instructed that whether it found that Owen was making a left turn from Piscataway Road or whether it found that she proceeded into the intersection from the stop sign on Temple Hills Road, she had a duty to yield the right of way to Carter. Moreover, the jury was told that if it found that the collision had occurred within the intersection, it must find, as a matter of law, that Owen was negligent, and return a verdict in favor of Carter on the Owen cross claim. The trial judge then stated that his instructions were subject to several provisions of the Motor Vehicle Code, including the duty to drive on the right half of the roadway, the duty to operate a vehicle at a safe and prudent speed not in excess of posted limits, the duty to refrain from operating a vehicle in wanton or willful disregard for the safety of persons or property, the duty to yield the right of way when making a left turn, and the duty to stop in obedience to stop signs. Carter excepted to the instruction on the ground that the duty to yield the right of way when proceeding from a stop sign or when making a left turn was not limited by any duty imposed on the favored driver by the Motor Vehicle Code.

The trial judge agreed with Carter and thereafter instructed the jury that the duty to yield in both circumstances was not limited by any provisions of the Motor Vehicle Code which he had read.

It is apparent that the instruction referring to the code provisions was intended to inform the jury concerning the duties of both drivers under all possible circumstances presented by the evidence, including the possibility that the jury would find that Owen was proceeding in the eastbound lane of Piscataway Road and was not attempting a turn. A jury instruction must be viewed in the context of the testimony and the instructions which preceded it. *Friel v. Freeland*, 231 Md. 27, 32, 188 A. 2d 340 (1963). The code provisions read to the jury indicated the duties of Carter if it found that Owen did not have the duty to yield the right of way at the time of the collision, as well as the duties of Owen if it were found that she was making a turn. While the instruction may not have been as explicit as possible, it presented the issues fairly to the jury and hence does not constitute reversible error. *See Guth v. Elliott*, 158 Md. 243, 252-253, 148 A. 216 (1930). Furthermore, Carter excepted to the instruction and the trial judge corrected the alleged error by the subsequent instruction clarifying the fact that the boulevard rule is not limited by any other code provision. "The purpose of requiring the objection to any part of the charge to be presented to the trial judge before the jury retires is to give the trial judge an opportunity to amend or supplement his charge if he deems an amendment necessary." *State v. Wooleyhan Transport Co.*, 192 Md. 686, 689-690, 65 A. 2d 321 (1949). *See Kraft v. Freedman*, 15 Md. App. 187, 289 A. 2d 614 (1972). An error in a previous instruction may be corrected by a subsequent instruction. *Ghiradello v. Malina*, 238 Md. 498, 510, 209 A. 2d 564 (1965); *Safeway Trails, Inc. v. Smith*, 222 Md. 206, 213, 159 A. 2d 823 (1960).

(3)

Carter challenges the admission into evidence of Landis's written statement in its entirety. He argued below and

argues on appeal that only the portion of the statement which was actually read by Landis, and which relates to the distance the Owen automobile had traveled before the accident occurred, was admissible. The remainder, he contends, was inadmissible as both hearsay and opinion evidence.

Landis's written statement was a description of the collision which he had observed. It differed from his trial testimony only to the extent of the possible discrepancy between Landis's indication at trial that the collision took place just within the intersection and his assertion in the written statement that the Owen automobile had traveled 15 feet after completely entering the eastbound lane of Piscataway Road. But the remainder of the statement, the admission of which was the basis of Carter's objection, is to the same effect as his testimony concerning the accident. Even assuming, without deciding, that the remainder of the statement was not within any exception to the hearsay rule and thus improperly admitted, we can find no prejudice to Carter. The previous admission of Landis's testimony without objection on the same matters contained in the written statement rendered any error non-prejudicial. *See S & S Bldg. Corp. v. Fidelity Storage*, 270 Md. 184, 190, 310 A. 2d 778 (1973); *Hartsock v. Strong*, 21 Md. App. 110, 120, 318 A. 2d 237 (1974).

Carter's contention that the statement contained Landis's opinion as to who was responsible for the accident and was therefore inadmissible as opinion evidence, is not properly before us. Although under Maryland Rule 522 d 1 a party need not state the reason for his objection to the admission of evidence, if requested to do so by the trial court he must state all reasons for the objection. Any reasons not so stated are deemed to be waived on appeal. *Wilt v. Wilt*, 242 Md. 129, 133-134, 218 A. 2d 180 (1966); *Ross v. State*, 24 Md. App. 246, 258-259, 330 A. 2d 507 (1975). The trial court asked to hear argument on the question of the admissibility of Landis's statement. The only reason given by Carter for his objection was that it was hearsay. Consequently, Carter waived any objection which he may have had based on the theory that the document contained opinion evidence.

(4)

Carter's final contention concerns the matter of his drinking prior to the accident. The trial judge instructed the jury that a violation of the motor vehicle laws is evidence of negligence if the violation is a proximate cause of the accident. At the conclusion of the instructions, the trial judge read to the jury Code (1957, 1970 Repl. Vol.), Art. 66½, § 11-902 (b), which provides that it is unlawful to drive while one's ability is impaired by the consumption of alcohol. Carter does not argue before us that the instruction incorrectly stated the law. Irstead, he claims that there was insufficient evidence that his ability to drive was impaired to submit the issue to the jury.

In support of his contention, Carter relies on *Alston v. Forsythe*, 226 Md. 121, 172 A. 2d 474 (1961). In that case the Court of Appeals held that evidence that the driver had consumed six bottles of beer in a period of five and one-half hours before the accident was an insufficient basis for instructing the jury that it could consider, as evidence of negligence, a violation of the then existing statute prohibiting driving while under the influence of alcohol, Code (1957), Art. 66½, § 206. The Court defined a violation of that statute as " 'drinking to the extent of probably affecting one's judgment and discretion or probably affecting one's nervous system to the extent that there is a failure of normal coordination' " or the "appreciable" loss of "normal control of . . . bodily and mental faculties." The Court said that evidence of this condition could be found in the manner of operation of the automobile by the alleged violator or in his actions or demeanor after the accident, although such evidence was deemed to be lacking in that particular case. *Alston, supra*, 226 Md. at 132. In the instant case, however, such evidence was not lacking. Landis testified that Carter drove his car around a curve at 70 to 80 miles per hour and crossed the center line. Officer Cox testified that Carter "smelled of alcohol," a fact verified by Carter's admission that he had been drinking shortly before the accident, and that Carter was "loud and boisterous" at the hospital. While we do not hold that this evidence necessarily established that Carter was driving in violation

408

of § 11-902 (b), we do believe that it, together with Carter's explanation of his conduct and assertion of sobriety, was a question of fact properly presented to the jury.

We also note that the tests enumerated in *Alston* were applicable to former § 206 of Art. 66½, which set forth a more serious offense than that established by the present *impaired* driving statute, § 11-902 (b) of Art. 66½.[1] As the evidence in this case would seem to be sufficient to constitute a violation of former § 206, it is clear that it is sufficient to constitute a violation of present § 11-902 (b). *See also Singleton v. Roman,* 195 Md. 241, 72 A. 2d 705 (1950).

*Judgments affirmed.*
*Appellant to pay costs.*

---

1. The present statute setting forth the more serious offense is § 11-902 (a) of Art. 66½, making it unlawful to drive while in an *intoxicated* condition.