## QUINN FREIGHT LINES, INC. *v.* WOODS, ETC. ET AL.

[No. 369, September Term, 1971.]

*Decided July 7, 1972.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and DULANY FOSTER, Chief Judge of the Supreme Bench of Baltimore City, specially assigned.

*John L. Moring, Jr.,* with whom were *Robert J. Callanan, G. Raymond Valle* and *Callanan, Goff, Moring & Callanan* on the brief, for appellant.

*Richard C. Whiteford* and *Robert R. Bright,* with whom were *W. Hamilton Whiteford, Ernest C. Trimble* and *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellees.

FOSTER, J., delivered the opinion of the Court.

Certiorari was granted in this case to pass on three questions raised by Quinn Freight Lines, Inc. (Quinn) in the Court of Special Appeals: (1) was the trial court in error in finding negligence on the part of George Trawitz, driver of the truck owned by Quinn; (2) did the court err in determining that Arthur L. Woods, operator of the automobile which collided with Quinn's truck, was not contributorily negligent; and (3) was there error in the trial court's decision that Mildred Robertson and Ronald Pellerin, passengers in the Woods' vehicle, were free from contributory negligence or assumption of risk. It appears that Judge MacDaniel who tried the case below without a jury decided these matters as questions of fact, not of law, although this is not entirely clear, but, in any event that is not significant in our review of the Court of Special Appeals' decision. After full consideration of the record, we are convinced that in *Quinn Freight Lines v. Woods,* 13 Md. App. 346 (1971), that court was correct in affirming the judgment given by the trial court. However, we believe the Court of Special Appeals dealt too briefly with the issue of primary negligence and in so doing has obscured several distinctions relating to the boulevard rule which need clarification.

The collision giving rise to this litigation occurred at 10:30 p.m. on July 7, 1968, while Woods was driving west on U. S. Route 40 toward Baltimore from the Edgewood American Legion Hall where he and his two passengers, Mildred Robertson and Ronald Pellerin, had spent the evening. Woods had consumed sufficient alcoholic beverage to produce an 0.19 alcohol content in his blood at the time of the accident, but from 10:00 p.m., when the three left the American Legion Hall, to the time of the collision, he conducted himself in a seemingly normal manner and did not give the appearance of being intoxicated. Robertson and Pellerin had also been drinking. Both passengers were in the front seat, with Robertson in the center, and Pellerin, who fell asleep sometime before the accident, on the right.

After traveling approximately five miles from Edgewood, the Woods' vehicle struck the right rear corner of a large, slow-moving Quinn tractor-trailer driven by George Trawitz which had just exited from Quinn's terminal on the north side of Route 40 and was crossing the westbound lanes to reach a left turn lane which began slightly more than one hundred forty-five feet west of the Quinn terminal exit. Route 40 in this area is a straight, nearly level, unlighted dual lane highway, with two lanes eastbound and two lanes westbound, separated by a twenty-seven foot grass median strip. The width of the westbound fast lane was 12 feet four inches; the westbound slow lane, 12 feet three inches to the right of which was a seven foot three inch shoulder. From the Quinn exit the driver of the truck had a clear view of the headlights of approaching westbound traffic for a distance of approximately 1645 feet. At the moment of impact, which occurred 145 feet from the Quinn terminal exit, the tractor-trailer was leaving the fast lane at an angle and pulling into the left turn lane. The tractor and a portion of the trailer were in the left turn lane; part of the trailer was still in the fast lane. Woods was killed. Pellerin and Robertson were injured. Trawitz, who died a year later of causes unrelated to the accident, was not

the source of any evidence adduced at trial. A scenario of the events which occurred in the last seconds before impact was provided by two eye witnesses, Woods' passenger Mildred Robertson, and Richard Ronald Duke, driver of a Good Humor ice cream truck. When Duke, who was traveling at approximately 45 miles per hour in the slow lane, first observed the Quinn truck, it was four or five car lengths ahead of him and was crossing lanes at an angle, partially in the fast lane and partially in the slow lane, moving very slowly. Behind Duke at that time was another Good Humor truck and slightly to Duke's rear in the fast lane was Woods, who for the past quarter mile had also been moving at 45 miles per hour but was now slowly gaining on Duke at a speed estimated between 45 and 50 miles per hour. The speed limit was 55 miles per hour. Duke testified that at the moment he first saw the Quinn truck it was at such an angle that he could see neither its headlights nor tail lights. The tractor-trailer had no lights on its side and the left turn signal was not turned on. Duke applied his brakes, swerved to the right and just cleared the rear of the truck. Mildred Robertson first saw the Quinn truck when it was three or four car lengths in front of Woods' automobile. She saw red lights, shouted a warning to Woods, and believes that he started to pull to the right before the collision. The left front of Woods' vehicle struck the right rear corner of the trailer. The impact sheared off the roof of the automobile over the driver's side and the car wedged under the bed of the trailer behind its right rear wheels.

We agree with the Court of Special Appeals that upon these facts the trial court was not clearly in error (see Rule 1086 and Rule 886) in finding that the accident resulted from a violation of the boulevard rule by the driver of the Quinn truck. We are given pause, however, by the following language in *Quinn Freight Lines v. Woods, supra,* at p. 351:

"* * * [W]hen the accident occurs outside of the intersection, the unfavored driver's negli-

gence would usually be a question for the trier of facts to decide. * * *"

This statement, standing unqualified and unexplained, obscures the distinction between the function of the court in ruling on the question of law presented and that of the trier of facts in cases such as this where an accident occurs near but outside the confines of an intersection. It also beclouds the well established rule that when a driver of a motor vehicle enters a through highway in violation of the boulevard law and as a result thereof his vehicle is involved in a collision with a vehicle traveling on the through highway, he is guilty of negligence as a matter of law. The sentence immediately after the above-quoted statement, we believe, further tends to blur these points. It reads as follows:

> "The testimony of Duke, the driver of the leading Good Humor truck, that he was a car-and-a-half length ahead and to the right of the Woods vehicle, and that the Quinn truck barely cleared his lane before his passage, would *tend* to support the trial judge's application of the boulevard law because, if that be true, the appellant's truck never safely reached his proper lane of traffic, nor attained sufficient speed. * * *" (Italics supplied.)

At this point the Court of Special Appeals' discussion of the boulevard rule ends, leaving much unsaid and, we fear, leaving the way open to an erroneous inference that when a violation of the boulevard rule results in an accident which occurs under the present circumstances outside the intersection, there remains some additional question of fact as to whether the violation constitutes negligence, *per se.*

The basic requirements of the boulevard law and its underlying purpose were enunciated in *Greenfeld v. Hook,* 177 Md. 116 (1939) and have since been restated and applied in innumerable cases. Judge Hammond (later

Chief Judge), in *Harper v. Higgs,* 225 Md. 24, 31 (1961), expressed the rule and its function succinctly:

"* * * A motorist must stop before he drives onto a boulevard and yield the right of way to vehicles thereon during their passage past the intersection. The relative rights of travellers on the two intersecting roads are not to be held to depend on nice calculations of speed, time and distance lest the obvious and essential purposes of the boulevard rule to accelerate the flow of traffic over the through highway at the permitted speed, without interruption, be frustrated. The favored driver has the right to assume the unfavored driver will stop and yield the right of passage and therefore, in most instances, even though the favored driver does not see the unfavored car he will not be guilty of negligence proximately causing the accident for, if he had seen it he could, unless put on notice to the contrary, have assumed that it would stop."

Art. 66½, § 234 (now § 11-404) of the Maryland Code (1957) imposed the same double duty of coming to a full stop and yielding the right-of-way to approaching traffic on the driver of the Quinn truck who entered the highway from a private driveway. Decisions of this Court have given this section the same interpretation as has been given to the boulevard law. *Privett v. Hauswald Bakery,* 258 Md. 218 (1970) ; *Slutter v. Homer,* 244 Md. 131 (1966) ; *Grue v. Collins,* 237 Md. 150 (1964) ; *Zeamer v. Reeves,* 225 Md. 526 (1961) ; *Shriner v. Mullhausen,* 210 Md. 104 (1956). In *McDonald v. Wolfe,* 226 Md. 198 (1961), we held that the obligation to yield the right-of-way is not limited to the area within the intersection itself, but extends to traffic approaching on the favored highway during its passage past the intersection, and the fact that an accident occurs outside the intersection does not bar the applicability of the boulevard rule if the col-

lision is the result of a violation of the boulevard rule or its equivalent. See also *Schwartz v. Price*, 215 Md. 43 (1957), and *Grue v. Collins, supra*. Once the entering vehicle has cleared the intersection and reached a point where it does not interfere with the favored vehicle's right-of-way through the intersection the boulevard rule ceases to be applicable. *Grue v. Collins, supra; McCann v. Crum*, 231 Md. 65 (1963).

In the usual boulevard case where the favored driver strikes or is struck by an entering driver within the intersection, there is no question of fact as to the negligence *vel non* of the unfavored driver, and the trial court, when the issue is properly raised in a motion for directed verdict or motion for judgment n.o.v., decides the question of the unfavored driver's negligence as a matter of law. In no case have we held that a different procedure should be followed where the accident occurs outside the intersection and the question of law is properly raised. It is for the trial judge, in the latter situation just as in the former, to rule on the applicability of the boulevard rule as a matter of law. That there may be some circumstances in which the question of a favored driver's contributory negligence may be properly submitted to the jury (or, in a non-jury case, decided by the judge in his capacity of trier of the facts) is well established. See *Pinchbeck v. Balto. Tank Lines, Inc.*, 258 Md. 211 (1970) ; *Harper v. Higgs, supra,* and cases cited therein. However, the question for the jury in such a case is not whether there has been negligence on the part of the unfavored driver but whether some intervening negligence of the favored driver or some other cause was the proximate cause of the accident. In *Ness v. Males,* 201 Md. 235 (1953), where the accident occurred 33 feet from the intersection and there was uncontroverted evidence that the vehicle entering the favored highway had cleared the intersection and reached its proper lane of traffic before being struck by a truck coming in the opposite direction, our predecessors affirmed the trial court's ruling, in refusing to direct a verdict against the driver

who entered from the unfavored road, that the boulevard rule was inapplicable. In *Shaneybrook v. Blizzard,* 209 Md. 304 (1956), the question as to whether the trial judge properly submitted the issue of the unfavored driver's negligence to the jury was not raised. The evidence in that case showed that the collision occurred after the unfavored driver had completed his turn into the intersection and was proceeding in his proper lane upon the favored highway and we held that upon this evidence the unfavored driver's entrance onto the highway was not a contributing cause of the accident. When it was unclear from the evidence in *Schwartz v. Price, supra,* as to whether the collision occurred within or outside the intersection, we held, however, that the evidence plainly indicated that the cause of the collision was the unfavored driver's failure to yield the right-of-way and stated that the court erred in refusing to direct a verdict on the issue of primary negligence. The facts in *Grue v. Collins, supra,* were similar in regard to primary negligence to those in the instant case. Collins, the unfavored driver, entered a dual lane highway from a restaurant parking lot, and proceeded at a slow rate of speed across the slow traffic lane and entered the fast lane about 50 feet from the parking lot. He continued along slowly in the fast lane and while preparing to make a "U" turn at a crossover some 174 feet from the point where he entered the highway, he was struck in the rear by another automobile which was traveling at an excessive speed in the fast lane. We stated that these facts tended to show that Collins was negligent but did not constitute grounds for a directed verdict because there were other elements in the case which indicated that his negligence was not the proximate cause of the collision. We said, at p. 160:

"The Grues [plaintiff passengers in Collins' car], to prevail on their motion for a directed verdict against Collins, had the burden of showing as a matter of law, not only that Collins was

negligent but also that his negligence was a contributing or proximate cause of the collision. * * *"

In *McDonald v. Wolfe, supra,* the trial court was held to have erred in denying the favored driver's motion for judgment n.o.v. where the evidence showed that the unfavored driver failed to stop at an intersection marked by a stop sign on a dual highway and headed north in the southbound lane where he collided head-on with McDonald between 80 and 100 feet from the intersection.

We do not believe that in the present case it is necessary to indulge in a detailed analysis of the facts which we have already stated at some length above. We conclude that the trial judge, who was sitting without a jury, was clearly correct in ruling that the Quinn truck violated the boulevard law by failing to yield the right-of-way to approaching traffic and interfering with Woods' passage along the highway and that this was the sole and proximate cause of the collision.

We are in accord with the Court of Special Appeals' analysis of the issue of whether Woods was contributorily negligent. Intoxication may be evidence of negligence, but no decision of this Court has ever gone so far as to say that intoxication in itself constitutes negligence. See *Short v. Wells,* 249 Md. 491 (1968) ; and *Alston v. Forsythe,* 226 Md. 121 (1961). The undisputed testimony of the witnesses who observed Woods prior to the accident was that he appeared normal and drove normally. In addition, Quinn's own expert, Dr. Henry Freimuth, testified that it was quite possible for a man to have a blood alcohol content of .19 percent and still not give any indication of intoxication to other persons.

As the Court of Special Appeals stated in its opinion at p. 353, when referring to the argument that Woods' intoxication prevented him from avoiding the accident:

"* * * The trial judge found the truck traveled less than 145 feet on the highway. More importantly the argument overlooks the fact

that even if Woods saw the defendant's truck, the boulevard rule would entitle him to assume that the truck would not violate his right-of-way. The argument also overlooks the fact that his vision was partially obscured by the height of the Good Humor truck."

It seems clear from the evidence that by the time Woods, who had no reason to expect that a truck would suddenly appropriate his right-of-way, was able to see the Quinn truck it was too late to avoid hitting it.

The holding of the Court of Special Appeals as to whether Woods' passengers, Pellerin and Robertson, assumed the risk or were contributorily negligent also coincides with our view of the case. Even riding with an intoxicated driver cannot constitute assumption of the risk or contributory negligence where, as in the present case, the trial court permissibly found the driver's intoxication was not a cause contributing to the collision.

*Judgments affirmed, costs to be paid by appellant.*