## HUGHES AUTOMOTIVE CO., INC. *v.*
## POLYGLYCOAT CORPORATION

[No. 941, September Term, 1982.]

*Decided March 4, 1983.*

The cause was argued before MASON, WILNER and ADKINS, JJ.

*John Kelly,* with whom was *Matthew W. Black, Jr.,* on the brief, for appellant.

No brief or appearance for appellee.

WILNER, J., delivered the opinion of the Court.

In May, 1977, appellant entered into an agreement with appellee Polyglycoat for the distribution of Polyglycoat's products.[1] Under this agreement, appellant was made the

---

1. The agreement with Polyglycoat was made by Talbert Hughes, individually. He assigned the contract to a corporation formed by him (Hughes Automotive, Inc.), which the contract permitted him to do. We shall use the term appellant interchangeably as referring to either or both the individual and the corporation.

exclusive distributor of those products in the Washington, Baltimore, Delaware area, including, by specific interlineation, certain cities and counties in Northern Virginia (Fairfax, Loudoun, and Arlington Counties and the cities of Woodbridge and Manassas), subject to his producing a specified level of business.

The agreement provided, among other things, that appellant's territory would not be "reduced, enlarged, or otherwise changed" without his consent, that the agreement would remain in effect "so long as neither party is in default or has breached any of [its] terms . . .," and that, so long as the agreement remained in effect and appellant continued to perform his obligations, "no other different person, firm or corporation will be granted the franchise of selling" Polyglycoat's products "in the territory herein granted to [appellant]" without appellant's consent.

Upon execution of the agreement, appellant proceeded to subdivide his territory, employ salesmen, and solicit business.

In the late fall of 1977 appellant began receiving reports, which he confirmed, that a company known as Audiovox, Inc., through its subsidiary Audiovox Mid-Atlantic Corporation, was also selling Polyglycoat products in his territory — particularly in the Northern Virginia cities and counties — in competition with appellant and in apparent violation of appellant's distributorship agreement with Polyglycoat. In December, 1977, he sought judicial relief by filing this action in the Circuit Court for Montgomery County against Polyglycoat, Audiovox, and the Audiovox subsidiary.

In his amended bill of complaint, appellant charged, among other things:

(1) "That the defendants, beginning on or about November 1, 1977, without just cause and with malicious intent, held meetings and discussions, laid plans and conspired to deprive plaintiff of its contractual rights with the intention of arranging the termination of plaintiff's dis-

tribution rights for Northern Virginia under the agreement with defendant Polyglycoat Corporation, so that the territory could be transferred to defendant Audiovox, Inc. and its distributor of goods in this territory, defendant Audiovox Mid-Atlantic Corporation.";

(2) "That in furtherance of said conspiracy, on or about November 1, 1977, defendants entered into a contract granting defendant Audiovox, Inc. through its local distributor Audiovox Mid-Atlantic Corp. a distributorship for the entire State of Virginia in direct, absolute and blatant contravention and breach of defendant Polyglycoat's contract with plaintiff.";

(3) That, in furtherance of the conspiracy, Audiovox and its subsidiary have in fact intentionally interfered with appellant's business relationships by claiming to be Polyglycoat's distributor in Northern Virginia and by attempting to sell Polyglycoat products in Maryland;

(4) That, also in furtherance of the conspiracy, Polyglycoat has threatened unilaterally to eliminate Northern Virginia from appellant's territory.

Upon these allegations, appellant asked for injunctive relief and damages.

Eventually, after a goodly exchange of pleadings and discovery, appellant dismissed the action against Audiovox and its subsidiary; his case against Polyglycoat, the only remaining defendant, came to trial in February, 1982.

At the conclusion of the live testimony presented on its behalf (after four days of trial), appellant sought leave to amend his amended bill of complaint, by interlineation, to clarify "that the allegations set forth therein include a claim against [Polyglycoat] for breach of contract." As explained in a later memorandum, appellant's position was that the bill of complaint already included such a claim, but, in light of

certain doubt cast upon that by counsel for Polyglycoat, he desired to make it clear beyond question. The court denied the motion; according to appellant, it was on the basis that the bill did *not* include such a claim and that Polyglycoat would be unduly prejudiced by adding one at that late date.[2]

By stipulation, certain depositions taken pretrial were then admitted into evidence, some on behalf of appellant, one on behalf of Polyglycoat. At that point, Polyglycoat moved, pursuant to Maryland Rule 535, to dismiss the complaint, and appellant asked the court to reconsider its denial of the motion to amend. The court took these matters *sub curia.*

On May 12, 1982, the court filed a memorandum opinion and order denying reconsideration of its earlier ruling and granting the motion to dismiss. This appeal is from that order.

Because of a procedural lapse, based upon an understandable but nonetheless erroneous interpretation of Maryland Rule 535, we shall be unable to decide the issues presented to us by appellant.

The court's order, as noted, denied appellant's motion for reconsideration and stated that "defendant's Motion to Dismiss is granted." Unfortunately, no judgment was ever entered upon that order. The docket merely reflects the granting of the motion.

Maryland Rule 535 provides:

> "In any action tried by the court without a jury at law or in equity, any party, without waiving his right to offer evidence in the event the motion is not granted, may move at the close of the evidence offered by an opponent for a dismissal on the ground that upon the facts and the law he has shown no right to relief. *Unless the court otherwise specifies,*

---

2. The actual reasons assigned by the court are not clear from the record. The initial ruling was apparently made when trial resumed on February 16, 1982, but there is no transcript of the proceeding that day in the record before us. As appellee has not favored us with a brief in this appeal, we have no way of knowing whether the reasons recited by appellant were indeed the actual ones.

*such a dismissal operates as an adjudication upon the merits."* (Emphasis supplied.)

We were advised at oral argument that the practice in Montgomery County is to treat the granting of a motion to dismiss under Maryland Rule 535 as tantamount, *ipso facto,* to the entry of a judgment, and thus, as a matter of course, no additional docket entry formally entering a judgment is made following such an order. This practice is based upon the supposition that the statement in the Rule that such a dismissal "operates as an adjudication upon the merits," is equivalent to a statement that such a dismissal also operates as a final judgment on the merits. That is not an unreasonable interpretation; but neither is it a correct one.

An adjudication is not the same as a judgment. The granting of a motion for summary judgment may also be an "adjudication upon the merits," as is the granting of a motion for directed verdict. Yet neither of those actions suffices as the entry of judgment and neither constitutes an appealable order. *See Eastgate Associates, Inc. v. Apper,* 276 Md. 698 (1976); *Felger v. Nichols,* 30 Md.App. 278 (1976). The required practice is for the clerk to enter a judgment based upon such an order, and for the appeal to be from the judgment so entered. We see no manifest distinction between a directed verdict granted under Maryland Rule 552 and a motion to dismiss under Maryland Rule 535. They serve precisely the same purpose, one being appropriate where the trier of fact is a jury, the other where the judge assumes that role. Accordingly, there being no final judgment in this case, the appeal must be dismissed.

That determination ends our ability to review the case at this time. *Eastgate Associates, Inc. v. Apper, supra,* 276 Md. 698. We shall, however, merely call the trial court's attention to the fact that a motion to dismiss under Maryland Rule 535 may be made only at the end of the opponent's case, not after the moving party has presented evidence. *See Smith v. State Roads Comm.,* 240 Md. 525, 539 (1965); *Lewis v. Germantown Insur. Co.,* 251 Md. 535, 540-41 (1968); *Quinn Freight Lines v. Woods,* 13 Md.App.

346, 350 (1971), *aff'd* 266 Md. 381 (1972). Here, Polyglycoat presented at least one deposition as substantive evidence following the close of appellant's case. Upon remand, the court should decide the case in its capacity as trier of fact and not upon the motion to dismiss. In doing so, the court no doubt will desire to consider (for whatever weight and credibility it may have) the deposition testimony of Philip Christopher, of which no mention was made in its May 12 opinion.

*Appeal dismissed; appellant to pay the costs.*