702 A.2d 767

**Herbert KENDALL and Shirley Kendall**

**v.**

**NATIONWIDE INSURANCE COMPANY
and Carl Jeffrey Hickey.**

**No. 127, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Nov. 21, 1997.

158

---

James J. Debelius, Debelius, Clifford, Debelius, Crawford & Bonifant, Chtd., Gaithersburg, on brief, Robert A. Meier, Jr., Damascus, on brief, for petitioner.

Angus R. Everton, Mason, Ketterman & Morgan, Baltimore, Donald J. Caulfield (John D. Holler, Caulfield & Holler, on brief), Mt. Rainier, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW and RAKER, JJ., and ROBERT L. KARWACKI and MARVIN H. SMITH, Judges (retired), Specially Assigned.

KARWACKI, Judge.

At issue in this case is the proper construction of the provisions of an automobile liability insurance policy relating to uninsured/underinsured motorist coverage issued by Nationwide Mutual Insurance Company ("Nationwide"), the Respondent, to Shirley Lou Kendall ("Shirley"), one of the Petitioners.

On April 26, 1991, Shirley was the owner and operator of a 1986 Pontiac that was involved in a motor vehicle accident with a motor vehicle operated by Carl Jeffrey Hickey ("Hickey"). At the time of the accident Shirley's husband, Herbert Richard Kendall ("Herbert"), also a Petitioner, was a passenger in the 1986 Pontiac. Both Petitioners suffered serious personal injuries.

At the time of the accident, Shirley maintained an automobile liability insurance policy with Nationwide covering three vehicles she owned. According to the declaration page of the policy, a 1975 Chevrolet had uninsured/underinsured[1] motorist coverage limits of $100,000 per person and $300,000 per occurrence for which a premium of $22.00 was paid. By contrast, a 1978 Chevrolet and the 1986 Pontiac had the statutory minimum requirements[2] of uninsured/underinsured

---

1. An uninsured motor vehicle includes an underinsured motor vehicle. An underinsured motor vehicle is one for which there are bodily injury and property damage liability coverages in effect but the limits of the coverage are less than the limits of uninsured/underinsured coverage in the claimant's policy.

 There is no need to distinguish between uninsured and underinsured coverage in this case as the policy limits are the same for both types.

2. Maryland Code (1957, 1986 Repl.Vol., 1990 Cum.Supp.), Article 48A, § 541(c)(2) provides:

 "In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in

motorist coverage limits of $20,000 per person and $40,000 per occurrence for which a premium of $11.80 per vehicle was paid.

The vehicle operated by Hickey was insured by the Maryland Automobile Insurance Fund with statutory minimum liability limits of $20,000 per person and $40,000 per occurrence.

Because of the low liability limits on the Hickey vehicle, Petitioners filed a claim against Nationwide seeking the highest uninsured/underinsured motorist coverage limits stated in their policy, notwithstanding the fact that the vehicle for which these limits were listed was not involved in the accident. Nationwide denied their claim.

Petitioner, Herbert, filed the initial complaint in the Circuit Court for Montgomery County naming as defendants his wife and Hickey. Shirley filed a cross claim against Hickey. Nationwide filed a motion to intervene as a party defendant, and that motion was granted. Shirley subsequently filed a cross claim against Nationwide asserting four counts sounding in contract, negligence, breach of Maryland statute, and declaratory judgment. Herbert also filed a cross claim against Nationwide essentially adopting Shirley's cross claim against Nationwide.

Shirley moved for partial summary judgment as to the contract and declaratory judgment counts, asserting that as

this State after July 1, 1975 shall contain coverage, in at least the amounts required under Title 17 of the Transportation Article, for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle. **There shall be offered in writing to the insured the opportunity to contract for higher amounts than those provided under Title 17 of the Transportation Article if these amounts do not exceed the amounts of the motor vehicle liability coverage provided by the policy.**" (Emphasis added).

Under Maryland law the statutory minimum limits for liability insurance are $20,000 per person and $40,000 per occurrence and the limit for property damage is $10,000 per occurrence. Md.Code (1977, 1987 Repl.Vol., 1990 Cum.Supp.), § 17–103 of the Transportation Article.

the named insured she was entitled to the highest limits available on her policy for uninsured/underinsured motorist coverage. Accordingly, Shirley sought damages in the amount of $100,000 per person and $300,000 per occurrence, as those were the highest limits available under one of the three vehicles covered by the insurance policy. Herbert joined her by also filing a motion for summary judgment, again adopting Shirley's motion in pertinent part, claiming that he was also entitled to the highest limits available as he was a family member living in Shirley's household.

Nationwide responded to the motions for summary judgment and asserted that a claimant under a multi-vehicle liability insurance policy is only entitled to the uninsured/underinsured coverage limits as stated on the declaration page for the vehicle that was involved in the accident. Nationwide contended that because the liability limits of the vehicle driven by Hickey were the same as the limits of uninsured/underinsured coverage for Shirley's 1986 Pontiac that was involved in the accident, the coverage did not apply as the Hickey vehicle was not underinsured. The trial court heard oral arguments and, finding that the policy was ambiguous, entered an order granting summary judgment, declaring that the Petitioners were entitled to uninsured/underinsured motorist coverage under the Nationwide policy in the amount of $100,000 per person and $300,000 per occurrence. Finding no just reason for delay, the trial court purported to certify the judgment as final pursuant to Maryland Rule 2–602(b).[3] Nationwide noted an immediate appeal to the Court of Special Appeals. In an unreported decision the Court of Special Appeals dismissed Nationwide's appeal because the trial court's certification of the declaratory judgment as a final judgment pursuant to Md.

---

3. Md. Rule 2–602(b) provides:
"(b) When Allowed.—If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
(1) as to one or more but fewer than all of the claims or parties; or
(2) pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only."

Rule 2–602(b) was improper. Cf. *Huber v. Nationwide Mutual Insurance Company,* 347 Md. 415, 701 A.2d 415 (1997). The case was remanded for further proceedings on the bifurcated issues of liability and damages.

At trial the jury determined that Hickey was the sole party responsible for the accident. Judgments were entered on special damage verdicts against Hickey and Nationwide in favor of Shirley for $100,000 and Herbert for $81,551.91. Both Hickey and Nationwide noted an appeal to the Court of Special Appeals. The judgments against Hickey were affirmed, while the judgment against Nationwide was reversed and the case remanded.

The sole issue presented on appeal by Nationwide was whether the trial court erred in finding that there was an ambiguity in the uninsured/underinsured provisions of Nationwide's automobile policy, such that Shirley and Herbert Kendall were entitled to the uninsured/underinsured policy limits of $100,000 per person and $300,000 per occurrence as stated for the 1975 Chevrolet notwithstanding this was not the vehicle involved in the accident. The Court of Special Appeals held that the Nationwide policy was not ambiguous because the policy specifically stated that limits apply to each insured vehicle as stated in the declarations and, accordingly, that the trial court erred in granting summary judgment in favor of the Kendalls and against Nationwide. *Hickey v. Kendall,* 111 Md.App. 577, 683 A.2d 789 (1996). Shirley and Herbert filed petitions for a writ of certiorari to this Court, seeking review solely of the proper construction of the uninsured/underinsured motorist provisions of the automobile insurance policy issued to Shirley by Nationwide. We issued the writ, and we shall affirm the decision of the Court of Special Appeals.

I.

Petitioners and Respondent both argue that a plain reading of the policy dictates a decision in their respective favors. The provisions of the automobile insurance policy issued by Nationwide to Shirley provides in relevant part as follows:

**"The Insuring Agreement**

For your payment of premiums in amounts we require and subject to all of the terms and conditions of this policy, we agree to provide the coverages you have selected. *Your selections are shown in the attached Declarations, which are a part of this policy contract.*

\* \* \*

**Uninsured Motorist Coverage**

Under this coverage we will pay all sums for bodily injury and property damage that you or your legal representative are legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle. Damages must result from an accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle.

\* \* \*

Bodily injury means bodily injury, sickness, disease, or death. *Relatives living in your household also are covered for bodily injury damages under this coverage.* Anyone else is protected while occupying:

1. your auto.
2. a motor vehicle you do not own, while it substitutes temporarily for your auto. Your auto must be out of use because of breakdown, repair, servicing, loss, or destruction.

\* \* \*

An uninsured motor vehicle includes an underinsured motor vehicle. This is one for which there are bodily injury liability coverage or bonds in effect. Their total amount, however, is *less than the limits of this coverage. These limits are shown in your policy's Declarations.*

\* \* \*

**Limits And Conditions of Payment**
**Amounts Payable for Uninsured Motorist Losses** *Our obligation to pay uninsured motorists losses is limited to*

*the amounts per person and per occurrence stated in the attached Declarations.* The following conditions apply to these limits:

1. Bodily injury limits shown for any one person are for all legal damages claimed by anyone for bodily injury or loss of services of one person as a result of one occurrence. Subject to this limit for any one person, the total limit of our liability shown is for all damages, including loss of services, due to bodily injury to two or more persons in any one occurrence.

2. Limits shown for property damage are for all legal damages claimed by one or more insureds for property damage as a result of one occurrence.

3. The insuring of more than one person or vehicle under this policy does not increase our Uninsured Motorist payment limits. *Limits apply to each insured vehicle as stated in the Declarations.* In no event will any insured be entitled to more than the highest limit applicable to any one motor vehicle under this or any other policy issued by us." (Emphasis added).

We begin by examining the rules of interpretation governing the contract of insurance. Although the petitioners argue that we should construe the policy against the insurer, we are unable to do so unless the policy is ambiguous. An insurance policy is a contract between the parties, the benefits and obligations of which are defined by the terms of the policy. We have repeatedly held that the construction of insurance contracts in Maryland is confined to the few well-established principles that are applied to the construction of contracts generally. *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985). "An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby." *Id.* at 388, 488 A.2d 486. Shirley paid different premiums in order to obtain different limits of insurance coverage for each vehicle under her policy.

 "Under Maryland law, when deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself." *Bausch & Lomb v. Utica Mutual,* 330 Md. 758, 779, 625 A.2d 1021, 1031 (1993). As we clearly held in *Cheney v. Bell National Life,* 315 Md. 761, 766, 556 A.2d 1135, 1138 (1989), "Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer. Rather, following the rule applicable to the construction of contracts generally, we hold that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole." In this case, reading the provisions of the policy as a whole as set forth above demonstrates Nationwide's effort to explain to the policy holder in detail her rights and the rights of her relatives when living in her household. At the beginning of the policy, under the general heading "The Insuring Agreement" Nationwide clearly states that "Your" (the policy holder) selections (the coverages and limits you have selected) are shown in the attached declarations. The provision further states that the selections are a part of the policy contract. Clearly, Nationwide expressed its intention to be obligated by the limits as set forth on the declarations page. The policy then goes on in greater detail under each specific type of coverage to define the terms and conditions relevant to that coverage.

 As we have stated, the terms of an insurance contract are to be interpreted utilizing well-established principles that guide the interpretation of contracts generally. *Pacific Indem. Co. v. Interstate Fire & Cas. Co.,* 302 Md. at 388, 488 A.2d at 488. Initially, we analyze the plain language of the contract according words and phrases their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean. *Id.* at 388, 488 A.2d 486. Reviewing the provisions of the policy at issue in the instant case under the Uninsured Motorist coverage section, we note that Nationwide has included a paragraph stat-

ing that an uninsured motor vehicle includes an underinsured motor vehicle and defining an underinsured motor vehicle. Undoubtedly this provision of the contract was understood by Shirley as she does not base her claim on an assertion that the Hickey vehicle was uninsured but rather that it was underinsured because the liability limits did not fully compensate her and her husband for their injuries. The last sentence in the same paragraph again states that the limits of coverage are as shown in the policy's declarations. Applying the principle of according words their ordinary meaning to the sentence above indicates that Nationwide's intention was to be obligated by the limits of the policy as stated.

Upon reading in the policy the phrase "as stated in the Declarations page," the policy holder is clearly directed to the declarations page in order to ascertain all of the applicable limits for the insured vehicles. The phrase "the limits apply to each insured vehicle" means just that—as stated for each, individual vehicle. This interpretation is further supported by the column arrangement of the declarations page. Each vehicle is listed separately across the top of the policy with the limits for each type of coverage clearly stated beneath the applicable vehicle. A reasonably prudent person would determine the limits of uninsured/underinsured coverage for each vehicle upon a viewing of the declaration page as follows: [4]

| COVERAGE *See policy for limits and deductible. | VEH 1/Pont/86 Limits/Premium | VEH 2/Chev/78 Limits/Premium | VEH 3/Chev/75 Limits/Premium |
|---|---|---|---|
| Bodily Injury Liability | $100,000 [5]/$57.70 300,000 [6] | $100,000/$53.80 300,000 | $100,000/$88.40 300,000 |
| **Uninsured Motorist** | $20,000 [7]/$11.80 | $20,000/$11.80 | $100,000/$22.00 |

4. The declaration page of the insurance policy at issue in this case is only reproduced in relevant part. Bold face type of uninsured motorist coverage is added for emphasis.

5. Indicates limits per person.

6. Indicates limits per accident.

7. Indicates limits per person.

| Premium Is Based On— | 40,000 [8] Pleasure | 40,000 Pleasure | 300,000 Pleasure |
|---|---|---|---|
| Use of Vehicle | | | |
| —Rated Driver | Adult, Female | Adult, Male | Male, Age 21, Married |
| —Discounts Applied | Multi Car Senior | Annual Milage Multi Car, Senior | Multi Car |

## II.

We do not agree with the Petitioners' suggestion that payment of premiums for higher limits of uninsured/underinsured motorist coverage for one vehicle in a multi-vehicle insurance policy creates an expectation that the higher limits will apply to all three vehicles, particularly when there is clear language in the policy to the contrary. "To determine the intention of the parties to the insurance contract, which is the point of the whole analysis, we construe the instrument as a whole." *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. at 388, 488 A.2d at 488. In assessing premiums for uninsured/underinsured motorists coverage in a multi-vehicle policy, insurance companies factor in that there will also be an increased number of drivers and thus increased exposure. J. APPLEMAN, INSURANCE LAW AND PRACTICE, § 5101, (1981) has addressed the issues involved with the assessment of premiums in multi-vehicle insurance policies:

> "If there were but a single insured, and only he ever drove an automobile, obviously he can drive only one vehicle at a time and the reasoning of such courts might then be logical. But, in considering basic underwriting and the actuarial computation of rate structures, we must take into consideration the customary procedures of mankind. *Automobile policies are now written so as to afford liability protection not only to the named insured, who is usually the owner, but to members of his family, perhaps persons residing in the same household, and—with a few exceptions —anyone operating with the permission of the named insured or adult members of his household.* When it comes to UM coverages, we have a like multiplication of exposure, since we have classes of risk, including all of the persons

---

8. Indicates limits per accident.

stated above, and pedestrians as well, with benefits granted in many circumstances when one may be in another vehicle or even upon the highway.

When the insured then owns more than a single vehicle, almost always it is with the contemplation that the second, or third, vehicles will be operated by others. And those others may, also, if injured by an uninsured motorist, expose the insurer to loss under that aspect of the contract.

Now it could not reasonably be argued that an insured owning several automobiles could insure only one of them for liability, or for collision, or comprehensive, damages—yet collect as to any loss inflicted by, or upon, any of those vehicles he elected not to insure. Yet this is precisely the result for which policyholders, or their counsel, contend under UM coverages and which has been upheld repeatedly by the courts. *Similarly, it is no more logical to double, or triple, a single limit of UM coverage, the amount of which the insured deliberately selected, and tender it free to the insured.*

*We may summarize the situation where there is a single policy owner, single company, and multiple vehicles by saying that the proper result is: 'What you buy is what you get—and no more.'* It is time for those courts, which have been so generous with the funds of others, to take a new look at this problem." (Emphasis added). (Footnote omitted).

It is a well-established rule of construction that a contract should be interpreted in its entirety such that a court does not dismiss or disregard any clause or phrase as meaningless. *Bausch & Lomb v. Utica Mutual,* 330 Md. 758, 782, 625 A.2d 1021, 1033 (1993); *Sagner v. Glenangus Farms,* 234 Md. 156, 167, 198 A.2d 277, 283 (1964). In this case, the declaration page clearly states that premiums are based on use of vehicle, rated driver, discounts applied, and special rating. All three vehicles stated use of vehicle as pleasure, however, rated driver differed with vehicle 1 as adult female, vehicle 2 as adult male and vehicle 3 as male, age 21, married. The vehicle listing the highest uninsured/underinsured motorist

limits, the 1975 Chevrolet, specifically listed the rated driver as male, age 21, married. It is difficult to imagine that these details were inserted into the policy for no apparent reason. Clearly the insurance company assessed the premiums based on information supplied by Shirley. The distinction between the rated drivers indicates that the insurance company factored into the assessment of premiums the type of driver receiving the coverage. The number of potential claimants increases with the number of drivers and vehicles insured, thus the risks increase warranting different premiums. Therefore, premiums for multiple vehicle coverage are not illusory but cover added exposure to the insurer. Shirley unquestionably received valuable consideration for the premiums paid for the various limits of insurance coverage she selected under the Nationwide policy.

## III.

If the language of the contract is ambiguous, extrinsic evidence may be consulted to determine the intention of the parties and whether the ambiguous language has a trade usage. The language used may be ambiguous if it is "general" and may suggest two meanings to a reasonably prudent layperson. *Pacific Indem. Co. v. Interstate Fire & Cas. Co.,* 302 Md. at 389, 488 A.2d at 489. Thus, if we find that the policy is ambiguous, we would look to extrinsic evidence in an attempt to clarify the ambiguity. In this case however, the rule is not applicable. There is no need to introduce extrinsic evidence because the sentence "Limits apply to each insured vehicle as stated in the Declarations" is not ambiguous. "Courts may construe unambiguous contracts as a matter of law." *Id.* at 389, 488 A.2d 486.

Petitioners argue that the policy is ambiguous because as the named insured and a relative living in her household, they have coverage that is personal to them and there is no specific policy language to the contrary. Petitioners purport to support this contention by referencing Md.Code (1957, 1986 Repl.Vol., 1990 Cum.Supp.), Art. 48A, § 541, stat-

ing that the statute does not authorize an "owned but otherwise insured" exclusion. Petitioners further contend that Nationwide's proffered policy interpretation would make the policy ambiguous in which event the language would have to be construed against them. As previously detailed, when construing insurance contracts words and phrases are given their ordinary meaning. The only reason it would be necessary to analyze Petitioners' argument is if there were an ambiguity after determining the ordinary meaning of the provisions. The Petitioner has failed to persuade us that the policy is ambiguous and thus should be construed against the insurance company. In this case we have already determined that the provisions of the policy are clear. "Where there is no ambiguity in an insurance contract the court has no alternative but to enforce the policy's terms." *Howell v. Harleysville Mutual Insurance Co.*, 305 Md. 435, 443, 505 A.2d 109, 113 (1986).

## IV.

In the alternative, Petitioners argue that a plain reading of the policy indicates that as a named insured and a relative living in the household, they have insurance that is personal in nature and does not run with the vehicle. Petitioners assert this argument based on the fact that if injured while a pedestrian or while a passenger in another vehicle the policyholder or her relative living in her household is entitled to select the highest coverage available under their policy. This argument also is without merit. It is logical to assume that in the majority of times that a claim is made under the uninsured/underinsured provision of an insurance policy, the claimant will likely be driving an owned and insured vehicle. Claims while a pedestrian or while in another's vehicle are likely to be significantly less and it is reasonable to assume that insurance companies have taken this into consideration when writing policies.

Although this Court has not decided a case precisely on point, we have examined two similar situations which provide guidance here. These cases hold that stacking uninsured/un-

derinsured coverage is prohibited in this State. Although the Petitioners seek to "blend" their coverage rather than "stack" it, the reasoning of the Court is applicable to the case at bar. The fundamental problem with the Petitioners' arguments is that they are asking this Court to declare that they are entitled to something they did not elect to purchase.

The first case decided by this Court regarding the prohibition against "stacking" coverages was *Howell, supra.* In that case, Howell was injured by an uninsured motorist while driving a company van. The company had a fleet of nineteen vehicles which carried uninsured/underinsured coverage. Item two on the declaration page of the policy revealed that the most that would be paid in uninsured/underinsured coverage for any one accident or loss was $50,000. Howell asserted that the policy was ambiguous. He further asserted that since a premium had been paid for each vehicle that he was entitled to the cumulative uninsured/underinsured coverage of all nineteen vehicles for a total amount of $950,000. The court held that the premium was paid for the maximum coverage of $50,000 as was clearly stated in the declarations. Again this case demonstrates that insureds are only entitled to the coverage that they pay for, and no more.

More recently, in *Hoffman v. United Services Auto. Ass'n,* 309 Md. 167, 522 A.2d 1320 (1987) certified questions were presented to this Court[9] by the United States District Court for the District of Connecticut regarding uninsured motorist coverage required by the Maryland Insurance Code. In that case, Kenneth and Sandra Hoffman were involved in an automobile accident with another vehicle while riding as passengers in a car driven by Richard Whelan. Sandra Hoffman was killed and Kenneth Hoffman was seriously injured. The at-fault driver's vehicle had minimum liability coverage of $20,000 per person and $40,000 per occurrence. The owner of the car in which the Hoffmans were passengers had unin-

---

9. Pursuant to the Maryland Uniform Certification of Questions of Law Act, Md.Code (1974, 1984 Rep. Vol.), §§ 12–601 to 12–609 of the Courts and Judicial Proceedings Article.

sured/underinsured coverage in the amounts of $50,000 per person and $100,000 per occurrence. Hoffman maintained his own automobile insurance policy with United Services Automobile Association ("USAA") covering two vehicles which had uninsured motorist coverage of $300,000 per person and $500,-000 per occurrence for each vehicle as stated in the declarations page.

Upon an agreement of the parties and the respective insurance companies for the at-fault driver and the driver of the car in which the Hoffmans were passengers, the New Haven Superior Court apportioned the insurance payments such that the estate of Sandra Hoffman was to receive the full per person limit of $20,000 from the liability insurer and an additional $30,000 from the uninsured/underinsured insurer.[10] Kenneth Hoffman was also awarded damages the details of which are not relevant to this analysis.

Thereafter, Hoffman, individually and as personal representative of his wife's estate, sued his insurance company, USAA, to obtain additional benefits as per the higher limits under his own policy. In addition, Hoffman attempted to "stack" the coverage, asserting that under the two vehicle policy, each having uninsured/underinsured coverage of $300,000/$500,000, he was entitled to a total coverage of $600,000/$1,000,000. USAA opposed the claim by asserting that recovery was prohibited under Md.Code (1957, 1986 Repl.Vol., 1990 Cum. Supp.), Art. 48A, § 543(a), which prohibits recovery of uninsured motorist benefits from more than one motor vehicle liability policy or insurer on either a duplicative or supplemental basis. In the alternative, USAA argued that if it were found to be liable, Maryland law prohibits "stacking" of coverages. Thus, USAA argued its total exposure should be limited to the amount of $300,000/$500,000 as stated in the policy. The relevant point of analysis of this case to the case at bar is

---

**10.** Sandra Hoffman was only entitled to a payment of $30,000 from the U/M coverage as that was the difference between the limits of the U/M coverage of $50,000 less the payment of $20,000 she received from the liability insurer.

that the Court held that the Hoffmans were entitled to additional benefits under their own policy (although it affirmed the prohibition against stacking) and that it was not prohibited by Md.Code (1957, 1986 Repl.Vol., 1990 Cum.Supp.), Art. 48A, § 543(a). This Court reasoned that the Hoffmans should not be prevented from benefitting from the higher uninsured/underinsured coverage that they elected to purchase under their own policy. The key point is that the Hoffmans were given a choice to purchase higher uninsured/underinsured coverage, and they exercised that option and presumably paid higher premiums for the coverage.

This is the relevance of the analysis to the case at bar. The Petitioners had the option of purchasing higher uninsured/underinsured limits of coverage for each vehicle by paying the associated higher premiums. They chose not to do this for two of the three vehicles insured under the same policy, and now they seek the benefits of a bargain they did not make. The Petitioners seek to fill the deficiencies in the selected policy limits for uninsured motorist coverage by requesting that we find that the coverage is personal in nature and thus that they can make a claim under the highest limits available. This would amount to an unwarranted judicial interference with the right to contract, as the policy is clear that the limits for each vehicle are as stated in the declarations page.

Applying the rationale of both *Howell v. Harleysville Mut. Ins. Co.* and *Hoffman v. United Services Auto. Ass'n* to the present case dictates the same result; the petitioners are only entitled to the uninsured/underinsured coverage that they purchased for the vehicle that was involved in the accident as stated in the declarations.

## V.

We find further support for our reasoning in the few cases from other jurisdictions which have considered the issues raised in the instant case. In *Nationwide Mut. Ins. Co. v. Hecker*, 183 Ill.App.3d 13, 131 Ill.Dec. 721, 538 N.E.2d 1277 (2 Dist.1989), the focus was on an insurance policy which in all

material respects was the same as the one at issue in the case *sub judice.* The insured was driving a vehicle that had uninsured motorist coverage of $50,000 per person and $100,-000 per occurrence that was involved in an accident with an uninsured motorist. Two other vehicles under the same policy carried uninsured/underinsured motorist coverage of $100,000 per person and $300,000 per occurrence. The Heckers argued that they were entitled to the highest limits available notwithstanding the fact that the car for which these limits were stated was not involved in the accident. They contended that the uninsured motorist coverage attached to the insured, not the vehicle. The *Hecker* court was not persuaded and thus held that the automobile insurance policy unambiguously limited uninsured motorist coverage to the policy limits as stated on the declarations page for the vehicle involved in the accident.

In *Makela v. State Farm Mut. Auto. Ins. Co.,* 147 Ill.App.3d 38, 100 Ill.Dec. 505, 497 N.E.2d 483 (1 Dist.1986), the insured had three automobiles insured under one policy. Two of the cars had uninsured motorist coverage of $15,000/$30,000 and the other had uninsured/underinsured coverage of $50,000/ $100,000. Although the plaintiff was injured while a passenger in a car with the lower limits she argued that she was entitled to the highest limits available under the policy for any one vehicle regardless of the vehicle involved in the accident because the policy was ambiguous. The court held that reading the provisions of the policy in tandem with the separate listings of coverages as stated on the declaration page unambiguously limits the amount of coverage as stated for the automobile involved in the accident. *Id.* 100 Ill.Dec. at 514, 497 N.E.2d at 492.

In *Illinois Farmers Ins. Co. v. Cisco,* 278 Ill.App.3d 1022, 215 Ill.Dec. 838, 664 N.E.2d 235 (1 Dist.1996), Richard Cisco ("Cisco") was killed in a motor vehicle accident with an automobile driven by an uninsured motorist. At the time of the accident, Cisco was operating a vehicle owned by his employer having uninsured motorist limits of $20,000 per person and $40,000 per accident. As a result of the fatal

injury, the insurance company paid the maximum uninsured motorist benefit of $20,000. Cisco and his wife had insurance for their own vehicles under personal automobile insurance policies issued by Illinois Farmers Insurance Company. Each of these policies provided for uninsured motorist limits of $100,000 per person and $300,000 per occurrence. Gloria Cisco, as personal representative of the deceased, then sought to recover under these policies. Although the court held that the limits in the two separate policies could not be stacked, they did hold that Cisco was entitled to recover up to the limits of his personal automobile policy. Accordingly, Cisco was entitled to recover benefits up to $100,000 as those limits were stated in his policy.

The reasoning of the *Cisco* court is comparable to the reasoning applied in the case at bar, when individuals are offered the opportunity to purchase higher limits of coverage and they elect to purchase those higher limits then they should not be precluded from collecting up to those limits. Nevertheless, they are limited by the terms of the policy and the amounts of coverage they elect to purchase for each, individual vehicle that is insured. As highlighted in footnote two, our statute simply requires that insureds be given the opportunity to contract for higher uninsured/underinsured motorist limits. It does not require that the higher limits be purchased.

*JUDGMENT AFFIRMED,*[11] *WITH COSTS.*

---

11. Pursuant to the mandate of the Court of Special Appeals, which we affirm, this case will be remanded to the Circuit Court for Montgomery County so that the trial court can rule on the Kendalls' claim that the applicable underinsured limits were $100,000 per person and $300,000 per occurrence because Nationwide allegedly failed to notify Shirley that she could contract for uninsured/underinsured coverage on the 1986 Pontiac that was equal to her liability limits.