**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CURTIS LYDELL WHITE,
Plaintiff-Appellant,

v.

ROY THOMAS ROGERS; CHURNS
TRUCK LINES, INCORPORATED,          No. 96-2753
Defendants-Appellees,

and

MELVIN CLENTION JOHNSON,
Defendant.

CURTIS LYDELL WHITE,
Plaintiff-Appellee,

v.

ROY THOMAS ROGERS; CHURNS
TRUCK LINES, INCORPORATED,          No. 96-2860
Defendants-Appellants,

and

MELVIN CLENTION JOHNSON,
Defendant.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-95-3060-MJG)

Argued: January 26, 1998

Decided: February 25, 1998

Before MURNAGHAN, NIEMEYER, and MOTZ,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Olugbenga Olatokumbo Abiona, Philadelphia, Pennsyl-
vania, for Appellant. Mark Ira Cantor, Owings Mills, Maryland, for
Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Curtis Lydell White was injured in an automobile accident, while
the front seat passenger in a car driven by his cousin, Melvin Johnson.
The car collided with a tractor trailer operated by Roy Thomas Rogers
and owned by Churns Truck Lines, Inc. White brought this diversity
action against Johnson, Rogers, and Churns for their asserted negli-
gence in causing the accident and the resulting serious injuries he suf-
fered. A jury awarded White a substantial verdict against his cousin,
Johnson, but found Rogers and Churns not negligent. White appeals,
challenging the district court's refusal to hold Rogers and Churns neg-
ligent as a matter of law under the Maryland boulevard rule. White
also appeals the court's decision to admit evidence relating to John-
son's intoxication. Finding no error, we affirm.

I.

At about 8:00 pm on the evening of April 26, 1993, Rogers went
to work at the Churns terminal in Exmore, Virginia, where he has

2

been employed as a truck driver for over nineteen years. After inspecting his truck, Rogers left the terminal at about 8:30 pm, en route to Woodbine, Maryland, to deliver his cargo of shrubbery early the next morning. At about 9:30 pm, Rogers arrived at a truck stop in Pocomoke, Maryland. He remained there for approximately two hours, chatting and drinking coffee. The truck stop is located off of the northbound side of Maryland Route 13, a highway with two lanes running in each direction.

At about 11:30 pm that same evening, Johnson and White left a party at the home of Johnson's mother, driving in Johnson's car. Both Johnson and White were intoxicated well over the legal limit. After the accident Johnson's blood alcohol level measured 0.27 and White's measured 0.263; a blood level of 0.10 demonstrates legal intoxication in Maryland. See Md. Code Ann., Transp.§ 16-205.1 (Supp. 1997). A friend of Johnson and White who followed them from the party and witnessed the accident testified that Johnson traveled north on Route 13, stayed in the right lane, adhered to the speed limit (which is 55 mph on the relevant portion of Route 13), and drove normally.

According to White, as Johnson drove past the truck stop Rogers began to leave it from the north exit. Rogers failed to stop at the exit or yield the right of way to Johnson, pulling instead into Johnson's path on Route 13. White concedes that Johnson at least briefly turned his attention from the road to talk to White, who apparently was asleep at the time. When he saw Rogers, Johnson tried to veer to the left, but ran into the left rear corner of the Churns truck. White received severe, permanent, and disfiguring injuries, including injuries to his brain, face, and spine. Johnson was arrested for and pled guilty to driving while intoxicated, in violation of Md. Code Ann., Transp. § 21-902(a) (Supp. 1997).

Not surprisingly, Rogers tells quite a different version of the story. According to Rogers, he returned to his truck between 11:45 pm and 12:00 midnight. He inspected his lights and tires, got into the truck, looked in the mirror and saw nothing coming down the highway. He then proceeded to the north exit of the truck stop, and stopped to look again for approaching traffic. Again he saw no vehicles approaching and entered the highway. He states that he had reached seventh gear (out of ten) when Johnson's lights appeared behind him.

3

The parties also differ as to many other essential facts of the accident, particularly the distance the truck had traveled from the north exit of the truck stop prior to impact. White maintains that based on a Maryland state trooper's recollection of Rogers' on-scene statements and the measurements taken by one of Rogers' experts, the truck traveled only 94 feet. Rogers' testimony and the evaluation of his expert indicate that the truck had traveled approximately 600 feet on the highway, had reached a speed of between 25 and 40 miles per hour, and took approximately 25 seconds to do so. Rogers' expert also concluded that Johnson was traveling between 35 and 55 miles per hour and was located about two- or three-tenths of a mile behind Rogers when Rogers entered the highway. Everyone agrees that visibility down the highway that evening was about one to one-and-a-half miles.

In the course of ruling on several motions in limine, the district court denied White's motion to exclude evidence of Johnson's intoxication. The court also decided to submit the questions of negligence and proximate cause to the jury. The jury found Johnson, but not Rogers or Churns, liable.

White thereafter moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), which the district court denied. Judge Garbis explained that "[t]he parties presented different, and in many essential particulars, conflicting, evidence regarding how the car . . . came into contact with the truck. . . . There was a quintessential issue of fact as to whether the truck had cleared the intersection and entered the flow of traffic prior to the time the car came onto the scene." This appeal followed.[1]

II.

Initially, White argues that the district court erred by submitting the question of Rogers' and Churns' negligence to the jury. White contends that Maryland law requires the district court to determine, as a matter of law, that on this record Rogers violated the boulevard rule.

_____

[1] Rogers and Churns have filed a protective cross-appeal, in the event that we set aside the jury verdict. In view of our holding, we need not address their cross-appeal arguments.

4

White principally relies on <u>Quinn Freight Lines, Inc. v. Woods</u>, 266 Md. 381, 385 (1972), in which the Maryland Court of Appeals reiterated

> the well established rule that when a driver of a motor vehicle enters a through highway in violation of the boulevard law and as a result thereof his vehicle is involved in a collision with a vehicle traveling on the through highway, he is guilty of negligence as a matter of law.

In response, Rogers contends that the boulevard rule does not require that the court conclude that he was negligent as a matter of law because he had entered the flow of traffic at the time of the accident. For this reason, he maintains the district court properly left the question of his negligence to the jury.

Maryland's boulevard rule provides as follows:

> The driver of a vehicle about to enter or cross a highway from a private road or driveway or from any other place that is not a highway shall stop . . . [and] shall yield the right-of-way to any other vehicle approaching on the highway.

Md. Code Ann., Transp. § 21-404(a), (b) (1992). The rule purports to "expedite the flow of traffic" on highways by dividing the world into "favored" and "unfavored" drivers and roads, such that "[t]he duty of an unfavored driver to stop and yield the right-of-way is mandatory, positive, and inflexible." <u>Dean v. Redmiles</u>, 280 Md. 137, 147 (1977). The favored driver may depend upon the unfavored driver's obligation to obey the law, although he "may not proceed in complete disregard of obvious danger." <u>Dean</u>, 280 Md. at 148. Moreover, the unfavored driver's duty to yield the right-of-way to the favored driver extends beyond the immediate area of the intersection such that "the fact that an accident occurs outside the intersection does not bar the applicability of the boulevard rule if the collision is the result of a violation" of the rule. <u>Quinn</u>, 266 Md. at 386-87; <u>see Simco Sales Serv. of Maryland, Inc. v. Schweigman</u>, 237 Md. 180, 186 (1964); <u>Grue v. Collins</u>, 237 Md. 150, 157 (1964).

5

The rule may be "mandatory, positive, and inflexible" when applied, but it has limits to its applicability. Once an unfavored driver has succeeded in entering the flow of traffic on the highway without interfering with a favored vehicle's right-of-way, an unfavored driver has fulfilled his obligations under the rule and assumes the same status as drivers of vehicles already traveling on the highway. See, e.g., Dean, 280 Md. at 149; Creaser v. Owens, 267 Md. 238, 244 (1972); Quinn, 266 Md. at 387; Grue, 237 Md. at 157-58; McCann v. Crum, 231 Md. 65, 68 (1963); Mallard v. Earl, 106 Md. App. 449, 468 (1995); Hansen v. Kaplan, 47 Md. App. 32, 37 (1980); Gazvoda v. McCaslin, 36 Md. App. 604, 613-14 (1977).

Where a credible evidentiary dispute exists as to whether the unfavored driver failed to yield or had entered the flow of traffic prior to the accident, the issue of the unfavored driver's negligence properly belongs to the province of the fact finder. See Grue, 237 Md. at 158; Ness v. Males, 201 Md. 235, 239-41 (1953); Great Coastal Express, Inc. v. Schruefer, 34 Md. App. 706, 722 (1977); Paul v. Lyons, 34 Md. App. 93, 97 (1976); Carter v. Correa, 28 Md. App. 397, 402-03 (1975); Kowalewski v. Carter, 11 Md. App. 182, 189-90 (1971); see also Goosman v. A. Duie Pyle, Inc., 206 F. Supp. 120, 127-28 (D. Md. 1962), rev'd on other grounds, 320 F.2d 45 (4th Cir. 1963).

White fails to acknowledge this line of precedent. Instead, he focuses almost wholly on Quinn. At first glance certain language in Quinn seems to support White's argument. Almost immediately after reciting the rule that an unfavored driver's duty extends beyond the confines of the intersection, the Quinn court stated:

> In no case have we held that a different procedure should be followed where the accident occurs outside the intersection and the question of law is properly raised. It is for the trial judge . . . to rule on the applicability of the boulevard rule as a matter of law.

Quinn, 266 Md. at 387 (emphasis added).

A closer look at Quinn resolves any ambiguity. The Quinn court included the quoted language in response to its "fear" that certain language in the intermediate appellate court's opinion in that case might

6

be misinterpreted. The Court of Appeals feared any "erroneous inference that when a violation of the boulevard rule results in an accident which occurs under the present circumstances outside the intersection, there remains some additional question of fact as to whether the violation constitutes negligence per se." Quinn , 266 Md. at 384-85. Thus, the Quinn court sought to dispel any doubt about whether "some additional question of fact" exists after it is determined that the boulevard rule applies and has been violated.

But as Quinn itself recognized, once an unfavored vehicle has successfully entered the flow of traffic on the favored road "the boulevard rule ceases to be applicable." Quinn, 266 Md. at 387. The line of precedent cited above directs that when a credible dispute exists as to whether the unfavored vehicle had successfully joined the flow of traffic -- i.e., a dispute as to whether the boulevard rule even applies -- the question belongs to the jury. The Quinn court premised its entire discussion on the notion that, although the accident occurred outside the intersection, the rule applied and the accident resulted from a violation of the rule. The court simply explained that in such situations the trial court must apply the rule to hold the unfavored driver negligent as a matter of law. In those circumstances, no additional fact finding was necessary. See also Creaser, 267 Md. at 244-45 ("when the `boulevard rule' is applicable the unfavored driver is negligent as a matter of law" and "if an unfavored driver is involved in an accident with a favored vehicle under circumstances where the boulevard rule is applicable then . . . the unfavored driver is deemed to be negligent as a matter of law") (emphasis added); cf. Dennard v. Green, 335 Md. 305, 307, 321-23 (1994) (even in an action by a passenger against both the favored and unfavored drivers in which the boulevard rule applies it is not necessary, given the definition of "right-of-way" under the Code, to find at least one of those drivers negligent as a matter of law, and it would be an invasion of the province of the jury to hold otherwise even where there was sufficient evidence that the favored driver operated his vehicle negligently and unlawfully and/or that the unfavored driver failed to yield the right-of-way).

Because the parties offered conflicting evidence regarding the events leading up to the accident,[2] the district court properly submitted the issues of negligence and proximate cause to the jury.

_____

[2] At oral argument, White asserted that because the maximum speed limit on the relevant portion of Route 13 was 55 mph and Rogers clearly

7

III.

White also argues that the district court's decision to admit evidence of Johnson's intoxication and the testimony of Dr. Yale Caplan as to the effects of intoxication unfairly prejudiced White. See Fed. R. Evid. 403. White asserts prejudice because "[a]t no time did Rogers provide any evidence of any act or omission to act by Johnson, attributable to his intoxication, that directly resulted in the accident." Brief of Appellant at 32. We find this argument wholly meritless.

The evidence was critical to whether Johnson operated his automobile negligently, as well as to the cause of the accident. "While evidence of intoxication does not, as a matter of law, constitute negligence per se, such evidence may be admissible to prove negligence" because "[e]vidence of intoxication frequently is part of a causal chain" and "such evidence is probative and relevant." Mitchell v. Montgomery County, 88 Md. App. 542, 555-56 (1991); see Quinn, 266 Md. at 389. We cannot conclude that the district court abused its discretion in admitting the evidence of Johnson's intoxication, particularly in light of the admission of Johnson's contemporaneous inattention.

Similarly, where evidence exists that a driver was intoxicated at the time of an accident, expert testimony as to how the intoxication affects the driver's ability to operate the automobile is admissible under Maryland law. See Hickey v. Kendall, 111 Md. App. 577, 611-13 (1996), aff'd sub. nom., Kendall v. Nationwide Ins. Co., 348 Md. 157 (1997) (trial judge did not err in admitting testimony of same Dr. Yale Caplan regarding effect of marijuana use on driver); Mitchell, 88 Md. App. at 556-58 (trial judge did not err in admitting testimony of same Dr. Caplan as to effects of alcohol intoxication on

_____

had not reached that speed, Rogers could not have successfully entered the flow of traffic. Despite counsel's contentions, no Maryland court has held that an unfavored vehicle must reach the maximum allowable speed in order to successfully join the flow of traffic for boulevard rule purposes. We refuse to so hold, lest we make a mockery of the very notion of a maximum limit. Although the speed limit may be relevant to the inquiry, it is not determinative.

8

"coordination, length of reaction time, blurred and double vision, lack of peripheral and side visions, problems with depth perception, and lack of ability to generally comprehend and make decisions and perform tasks" (internal quotation omitted)). Much like his testimony in Mitchell, Dr. Caplan testified here as to "what the concentration of intoxication meant in terms of intoxication for that particular individual" and his conclusions were "related to Mr. Johnson's conduct which might have contributed to the accident." Brief of Appellant at 40 (quoting the testimony offered by Dr. Caplan). The district court did not abuse its discretion in admitting this testimony.[3]

AFFIRMED

_____

[3] At the outset of his brief, White maintains that the jury's verdict was contrary to the weight of the evidence. White failed to develop the argument either in the brief or at oral argument. In any event, no doubt exists that the evidence, viewed in the light most favorable to Rogers, the non-movant, supports the jury's verdict.